## Case No. 16,900.

### VAUGHAN v. SIX HUNDRED AND THIRTY CASKS OF SHERRY WINE et al.

[7 Ben. 506.] [1]

District Court, S. D. New York.  Dec., 1874.

BILL OF LADING — EXCESSIVE LEAKAGE — NEGLIGENCE—JOINDER OF ACTIONS.

1. A quantity of sherry wine was brought from Cadiz to New York, under bills of lading which contained the words "shipped in good order and well conditioned," to be "delivered in like good order and well conditioned, dangers of the seas excepted," and also the words, "weight and contents unknown, and not accountable for average leakage and breakage." The casks were delivered to consignees to whom the bills of lading had been transferred, but they refused to pay the freight. The master of the vessel filed a libel against the goods and the consignees, to recover the freight. It appeared, that when the casks were discharged, part of them were entirely empty, and others partially empty and leaking, and that the casks were "inferior and shaky" casks. No evidence was offered as to the condition of the casks when shipped. An exception was taken to the libel because it joined a cause of action in rem with one in personam: Held, that, as the cause of action arose out of a contract which, if the respondents were liable on it, also bound the property, and as the respondents claimed the property, there was no reason for not joining the causes of action.

[Cited in The J. F. Warner, 22 Fed. 343; The Director. 26 Fed. 711; Joice v. Canal-Boats Nos. 1758 & 1892, 32 Fed. 554; The Baracoa, 44 Fed. 103.]

2. There was no evidence to show that the casks delivered empty and partly empty were not empty and partly empty when shipped.

[Cited in Miller v. Hannibal & St. J. R. Co., 90 N. Y. 435.]

3. There was no evidence that the leakage of the casks was greater than "average."

4. To resist successfully the claim of the vessel for freight, it must be shown affirmatively that the loss resulted from negligence on her part.

[Cited in Hus v. Kempf, Case No. 6,943; The Tommy, 16 Fed. 603; The Querini Stamphalia, 19 Fed. 124.]

5. Such negligence had not been shown, and the libellant was entitled to the freight.

C. D. Adams, for libelant.

W. R. Beebe, for claimants and respondents.

BLATCHFORD, District Judge. The libellant, as master of the bark Hudson, brings this libel against a quantity of sherry wine and its consignees to recover freight and primage amounting to $866.25 in gold, for transporting said wine, 630 quarter casks, in said vessel from Cadiz to New York, in April, 1873, un-

1 [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

der bills of lading which were transferred to the respondents. The bills of lading describe the goods as "quarter casks of sherry wine," and contain the words, "shipped in good order and well conditioned," so many casks of sherry wine, and the words, "to be delivered in the like good order and well conditioned," dangers of the seas excepted. On the bills of lading are stamped the words, "weight and contents unknown, and not accountable for average leakage and breakage." The libel alleges that the casks of sherry wine were "to be delivered, the dangers of the seas excepted, in like good order as they were received;" that "the said sherry wine was delivered in like good order and condition, and the same was duly received and entered by the said consignees in the custom house of the port of New York, and were ordered into the bonded warehouse, to be held for the payment of the duties thereon, where the same now are;" and that the consignees, the respondents, have not paid the $866.25.

The answer excepts to the libel, because it joins a cause of action against the property, in rem, with one against the respondents, in personam. This exception is overruled. The cause of action arises out of a contract which, if the respondents are liable on it, also binds the property, and the respondents claim the property. There is no good reason for not joining the causes of action.

The answer (which is put in by the respondents as such, and as claimants of the wine) alleges that the wine was delivered at New York in a damaged condition; that only a part of the same was delivered; that such loss and damage was not caused by any of the exceptions in the bill of lading, but from some cause which the ship was bound in law to provide against; that the damage was more than the amount of freight; that the damage ought to be recouped from the freight; and that there is nothing due to the libellant or to the vessel.

At the trial, it was admitted that the 630 casks, without reference to what was in them, were delivered from the ship at New York, and were taken to the bonded warehouse of the United States there, and there placed in the custody of the officers of the customs. A witness for the libellants testified: "I discharged the 630 casks; they were not in very good order; part of them were wholly empty; part of them were partly empty; almost all of them required coopering; they came out in very bad order; a portion of the casks were leaking; I considered them to be inferior casks; they looked like shaky casks; they were in the between decks; I looked at them in the between decks; they were leaking then in the between decks; the wine was running over the between decks." It was also shown that one of the claimants and respondents, when called upon, on behalf of the libellants, to pay the freight and primage, soon after the casks were delivered, declined to pay it, stating, as a ground of refusal, alleged damage to the cargo. No testimony was put in by the defence.

The allegation of the answer, that the wine

was delivered at New York in a damaged condition, that is, that such as was delivered was damaged, is not supported by any evidence. The only question is as to whether any loss of wine is shown for which the ship is responsible. The casks were, all of them, delivered by the ship. The ship had no knowledge or information as to the quantity of the contents of the casks when they were laden, nor is there any evidence as to such quantity. A bill of lading for so many casks of wine by no means implies that the casks are full of wine. Part of the casks were wholly empty when unladen. But there is nothing to show that those particular casks may not have been wholly empty when laden. Part of the casks were partly empty when unladen. But there is nothing to show that those particular casks may not have been partly empty when laden. The evidence is, that the casks were in bad order when unladen; that most of them required coopering; that a portion of them were leaking in the vessel; and that the wine which had so leaked out was running over the between decks.

Under the bills of lading the ship is not responsible for "average leakage." There is no evidence in this case that the leakage was greater than average leakage. Such a clause in the bill of lading does not cover leakage from negligence in the vessel, in the stowing or handling of the casks. But it is for the shipper who resists payment of the freight to show such negligence. Dedekam v. Vose [Case No. 3,729]; The David & Caroline [Id. 3,593]; The Delhi [Id. 3,770]. The statement in the bill of lading, that the casks were "in good order and well conditioned," extends only to their apparent external condition, excluding any implication as to their intrinsic soundness and sufficiency. Clark v. Barnwell, 12 How. [53 U. S.] 272, 283; The Columbo [Case No. 3,040]; The Olbers [Id. 10,477]. It is therefore open to the vessel to show the defectiveness of the casks. The evidence is that the casks were "inferior" casks and "shaky" casks. This would seem to be sufficient to account for the leakage. But, on the ground that, under these bills of lading, negligence on the part of the vessel must be affirmatively shown by the owners of the wine, in order to resist successfully the claim by the vessel for the freight money, and that such negligence has not been shown, I direct a decree for the libellants for $866.25 gold, with interest and costs.