ONE HUNDRED AND THIRTY-SEVEN BALES OF COTTON (UNITED STATES v.). See Case No. 15,939.

ONE HUNDRED AND THIRTY-THREE CASKS OF DISTILLED SPIRITS (UNITED STATES v.). See Case No. 15,940.

ONE HUNDRED AND THREE CASKS OF RICE. See Case No. 10,535.

---

## Case No. 10,524.

ONE HUNDRED AND TWELVE STICKS OF TIMBER.

[8 Ben. 214.] [1]

District Court, E. D. New York. July, 1875.

DEMURRAGE — CHARTER PARTY AND BILL OF LADING — LIEN — COSTS.

1. A schooner was chartered to bring a cargo of timber and lumber from Savannah to New York, at specified rates of freight. The charter contained no clause specially binding the cargo for its performance. In loading the cargo the vessel was detained six days by default of the charterer. The master signed bills of lading for the lumber and others for the timber, which provided for the delivery of the cargo at New York to order, on payment of freight as per charter: which bills came into the hands of third parties, who made advances on them without notice of any claim for demurrage. On the arrival of the vessel in New York, the master offered to deliver the cargo on payment of the freight, and demurrage for the six days. The consignees were willing and offered to pay the freight, but refused to pay the demurrage; whereupon the master filed a libel against the cargo to recover the freight and demurrage. The consignees of the lumber and of the timber intervened and defended separately. After the suit was brought, the freight on the lumber was paid. Held, that the bills of lading, when in the hands of innocent third parties, released the cargo from all lien except for the freight,

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

and that the master should have delivered the cargo on being paid his freight.

[Cited in The Querini Stamphalia, 19 Fed. 125; Gronn v. Woodruff, Id. 144. Distinguished in The Peer of the Realm, Id. 217. Cited in The Pietro G., 39 Fed. 368.]

2. That the libel, as against the lumber, must be dismissed, with costs, and that, as against the timber, the libellant might have a decree for the freight due thereon, less the claimant's costs.

[Distinguished in Lindsay v. Cusimano. 12 Fed. 505. Cited in Addicks v. Three Hundred and Fifty-Four Tons Crude Kainit, 23 Fed. 729; The Mary Riley v. Three Thousand Railroad Ties, 38 Fed. 255.]

In admiralty.

W. W. Goodrich, for libellant.

Beebe, Wilcox & Hobbs, for claimant of the timber.

O. H. Weller, for claimant of the lumber.

BENEDICT, District Judge. This action is to enforce a lien upon a cargo of timber and lumber for the amount of freight and demurrage claimed to be due upon a charter, made between the master of the schooner Gertrude E. Smith and H. H. Colquit & Co., of Savannah. The charter fixes the freight at the rate of $7 on timber, and $6 on lumber, per thousand superficial feet, payable on proper discharge of cargo, for each thousand feet delivered. There is no clause in the charter in terms binding the cargo to the performance of the contract. Under this clause the lumber and timber proceeded against was loaded; and, as the libellant insists, a claim for six days' demurrage was created by delay on the part of the charterer in loading the vessel. After the loading was completed, the master issued bills of lading for the timber and the lumber, respectively, which provided for a delivery to order in New York on paying freight as per charter-party. These bills of lading contain no other reference to the charter, and make no mention of a claim for demurrage. Afterwards these bills came into the hands of two parties in New York, who made advances upon them, without notice of the existence of any other charge upon the cargo except that for freight, at the rates of $7 and $6 per thousand feet, as stated in the bills of lading. Upon the arrival of the cargo in New York, delivery was tendered, on payment of freight and demurrage. The holders of the bills of lading offered to pay freight, but refused to pay the demurrage; whereupon the shipmaster libelled the cargo for the freight and demurrage. The holders of the bills of lading intervened and defended separately. Upon these facts the question to be determined is, whether the shipmaster was entitled to hold this merchandise as against the holders of the bills of lading, not only for the freight named in the bills of lading, but also for the amount of the demurrage, which he claimed to have shown to have become due by reason of the charterer's delay in loading.

This question I must determine adversely to the libellant. Such bills of lading as were in this instance given, in the hands of innocent third parties who have advanced upon the faith of them, have the effect to release the merchandise from any lien, except for the freight. Consequently, the master had, as against the claimants, no lien on the cargo for the demurrage, and should have delivered it upon payment of freight. It appears that, as respects the lumber, there has been a full payment of the freight on that since the commencement of this action. The freight upon the timber has not yet been paid. It also appears that the consignees of both the lumber and the timber were at all times ready and willing to pay the freight upon receipt of the cargo.

The decree will accordingly be, that the libel against the lumber be dismissed, with costs to be taxed; and that, as against the timber, the libellant recover the freight according to the bill of lading, less the claimant's taxed costs.