GRANBERRY (HASTINGS v.).  See Case No. 6,200.

## Case No. 5,682.

### GRAND v. The IBIS.

[3 Woods, 28.] 1

Circuit Court, E. D. Louisiana.  Nov. Term, 1876.

#### CHARTER-PARTY—FREIGHT.

1. Where a vessel is chartered for a voyage for a round sum, the charterer has the right to load the vessel himself, or allow others to do it under the contract with him.  In the latter case, the goods placed on board by third persons, under such contract, are liable only for their own freight and not for the gross sum named in the charter-party.

2. This rule is not changed by the following clause inserted in the charter-party, viz.: "Bills of lading to be signed when presented without prejudice to this charter-party."

[Distinguished in The Peer of The Realm, 19 Fed. 217.]

[Appeal from the district court of the United States for the Eastern district of Louisiana.]

On January 15, 1876, one J. M. Oriol, a merchant of New Orleans, entered into a contract of charter-party with A. N. Christensen, master, whereby he chartered the bark Ibis for a voyage from New Orleans to Liverpool, England, for the carriage of a full cargo of timber or other merchandise to be furnished by Oriol.  In consideration whereof Oriol agreed to pay the gross sum of £1,150 sterling in cash, on right delivery of cargo at port of discharge, etc.  The charter-party also contained this stipulation, "It is also agreed that this charter-party shall commence when the vessel is ready to receive cargo * * * and end on the right delivery of cargo and payment of freight at the port of discharge; bills of lading to be signed when presented without prejudice to this charter-party."  Without any knowledge of the terms of this charter-party, the libelant [Leon Grand] contracted with Oriol, the charterer, for the carriage of a quantity of lumber, in logs, to Liverpool, at the rate of 60 shillings sterling per load of 50 cubic feet queen's calliper measure, and in pursuance of said contract sent to the bark lots of white ash, white oak, walnut and black walnut logs of the value of about $5,000, and the same were received and stowed on board. The libelant then caused bills of lading to be made out for the logs, according to his contract with Oriol, and sent them to the master of the bark for signature.  He declined to sign the bills on the ground that he had chartered his vessel to Oriol for a round sum, and that he would not sign said bills

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

unless they contained the clause "as per charter-party."  Afterwards, libelant having been advised that he would only be liable for the freight on his lumber, agreed to accept the bills of lading with the clause above mentioned inserted therein; but the master of the bark then refused to give bills of lading unless they expressly stipulated that the vessel should have a lien upon libelant's said merchandise for any deficit that might remain unpaid of the round sum for which she was chartered by Oriol.  The bark sailed with the merchandise of libelant on board, without having given any bills of lading. The merchandise of the libelant was conveyed to Liverpool by the Ibis, and arrived May 22, 1876, and was there sold for the freight due on the charter-party, and brought the sum of 1,032 pounds, 2 shillings and 7 pence sterling.  The freight on the cargo, exclusive of the merchandise of libelant, amounted to the sum of 500 pounds, 14 shillings and 9 pence.  The libel prayed for a decree against the bark for the value of the merchandise shipped by libelant.

Joseph P. Horner, for libelant.
Charles B. Singleton, for respondent.

WOODS, Circuit Judge.  The question presented is whether, under the circumstances of the case, the respondent had a lien upon the merchandise of libelant for the payment of the gross sum mentioned in the charter-party, or whether it was only liable for its own freight.  If the former, then the respondent is only liable for so much of the proceeds of libelant's merchandise as remained after satisfying the sum due on the charter party; if the latter, then the respondents are liable for the value of the merchandise in Liverpool, less the freight from New Orleans.

The general rule unquestionably is that, where a vessel is chartered for a voyage for a round sum the charterer has the right to load the vessel himself, or allow others to do it under contract with him, and the goods so placed on board by third persons under such contract, are liable only for their own freight, and not for the payment of the gross sum named in the charter-party: Perkins v. Hill [Case No. 10,987]; 1 Pars. Shipp. & Adm. 301, notes 1 and 2; Drinkwater v. The Spartan [Case No. 4,085]; Faith v. East India Co., 4 Barn. & Ald. 630.  But it is claimed in this case, that the clause in the charter-party whereby the master agreed to give bills of lading "without prejudice to this charter-party," changes the general rule and implies that goods put on board not belonging to the charterer, shall be liable for the gross sum mentioned in the charter-party, and not merely for their own freight. I think the authorities are adverse to this construction of the charter-party.  In the case of Paul v. Birch, 2 Atk. 621, it was held

by Lord Hardwicke that where the charterers had bound the goods for the payment of the hire or freight and afterwards become bankrupts, full effect should be given to that clause as against the assignees. But an attempt was made to charge the goods of third persons who were shippers under the charterers, with the full amount of the hire or freight. This last claim was resisted, and Lord Hardwicke held that these latter goods were liable only to the extent of the freight payable to the charterers by the shippers. So in the case of Kerford v. Mondel, 5 Hurl. & N. 931, the managing owner chartered his ship for a voyage to Central America, and return, at certain specified rates of freight, with a provision that the master might sign bills of lading without prejudice to the charter-party. And it was agreed that for the security and payment of all freight, dead freight and other charges, the master or owner should have a lien on the cargo or goods laden on board. On her homeward voyage one Larraondo shipped certain bags of sugar and cochineal, and took separate bills of lading whereby the goods were deliverable "on payment of freight and carriage as agreed." These bills of lading were signed by the master in pursuance of the charter-party. On tender of the amount due for carriage of the sugar and cochineal, the master refused to deliver, claiming a lien for dead freight under the charter-party. Trover was brought to recover the value of the goods. Watson, Baron, said: "The real question agitated between the parties is, whether there was a lien for dead freight under the circumstances. Now, in the original charter there was a lien for dead freight, but the master was to sign bills of lading for goods shipped on board the vessel, and the goods were shipped on board the vessel, and in the bill of lading there was no lien for dead freight, but merely for freight (i. e., freight for carriage) as agreed. It is perfectly clear that does not apply to dead freight. The price is for the carriage of goods. It would be a monstrous supposition that a man who shipped 100 pounds of goods on board a vessel should be held responsible for 1,500 pounds dead freight."

The fair construction of the clause in the charter-party under consideration, by which the vessel, her freight and appurtenances, and the merchandise laden on board, are bound to each other for the performance of the charter-party, and that "bills of lading, when presented, are to be signed without prejudice to this charter-party," is not that the goods of third persons shall be liable for the entire freight, but only for their own freight, and that the clause binding the cargo should only extend to the cargo of the charterer. In accordance with these views, there must be a decree in favor of libelant for the value of his logs in Liverpool, less the freight thereon from New Orleans, and the costs in both the district and circuit courts.