## THE PEER OF THE REALM.[1]

*(Circuit Court, E. D. Louisiana.  December, 1883.)*

CHARTER-PARTY—BILLS OF LADING.

    A charter-party contained the following stipulations: "The captain shall sign bills of lading at any rate of freight as presented, without prejudice to this charter-party; any difference between the amount of freight by the bills of lading and this charter-party to be settled at port of loading, in cash, before sailing.  \*  \*  \*  The owners or master of the steamer shall have an absolute charge and lien upon the cargo and goods laden on board for the recovery and payment of all freight, dead freight, demurrage, and all other charges whatsoever." The master refused to sign bills of lading unless there was stipulated or expressed therein, "other conditions as per charter-party." *Held* that the master had the right to insist upon such stipulation.

    *The Ibis*, 3 Woods, 28, distinguished.

Admiralty Appeal.

*Charles B. Singleton* and *Richard H. Browne,* for libelants.

*James McConnell,* for claimants.

PARDEE, J.   The libelants sue for a breach of a charter of the British steam-ship Peer of the Realm, made in Liverpool, England, September 28, 1878.   The charter-party contains among others, the following stipulations:

"The captain shall sign bills of lading at any rate of freight as presented without prejudice to this charter-party; any difference between the amount of freight by the bills of lading and this charter-party to be settled at port of loading, in cash, before sailing.  If the steamer be not sooner dispatched, twenty working days (Sundays excepted) shall be allowed the charterers for loading, etc.  And it shall be at the discretion of the said charterers or their agents to detain the steamer a further period not exceeding ten like days, for the purposes aforesaid; the charterers or their agents paying demurrage at the rate of 50 pounds per day.  The owner or master of the steamer shall have an absolute charge and lien upon the cargo and goods laden on board for the recovery and payment of all freight, dead freight, demurrage, and all other charges whatsoever.

The breach and violation of the charter-party alleged is that the master refused to sign bills of lading unless there was stipulated or expressed thereon, *"other conditions as per charter-party."*   The question for decision is whether the master had the right to insist upon such stipulation.   The charter-party, so far as it speaks within the law, furnishes the rule of conduct to the parties.   It provides for a lien upon the cargo and goods laden, for the freight, dead freight, and demurrage.   This is lawful and binding between the parties and as to all shippers with notice.   According to the English authorities, which are clear upon the subject, "a lien may be created by contract between the parties, not only for freight, but for dead freight, demurrage, and as many more of the usual claims of the ship-owner as they choose to name."   Macl. Merc. Shipp. (3d Ed.) 512.   See,

[1]Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

note 7, for authorities. And that shippers with notice of stipulations of charter-party are bound. See *Sandeman* v. *Scurr*, L. R. 2 Q. B. 86, quoted in Macl. 351. *Peek* v. *Larsen*, L. R. 12 Eq. 378. See, also, Macl. 514.

In 1 Pars. Shipp. 302, 303, it is said:

"We have seen that the charter-party usually provides expressly that the owner binds the ship and the freight to the performance of his part of the bargain, and the shipper binds the cargo to the ship for his performance. But without these expressions the law-merchant creates or implies this mutual obligation in every case of a contract of affreightment whether by bill of lading or charter-party. *If, however, the parties choose to stipulate otherwise, as that there shall be no lien, or that the lien shall be other than it usually is, they may do so.*"

My attention has been called to no American case that holds to the contrary, and I have examined the following, cited by proctors: *The Volunteer and Cargo*, 1 Sumn. 551; *The Bird of Paradise*, 5 Wall. 559; *The Salem's Cargo*, 1 Spr. 389; *Perkins* v. *Hill*, Id. 124; *406 Hogsheads of Molasses*, 4 Blatchf. 319; *A Quantity of Timber and Lumber*, 8 Ben. 214. All are to the purport that the owners and charterers may make their own stipulations as to the terms of the charter-party, and all imply, though not expressly so deciding, that shippers with notice will be bound by such stipulations.

The case of *The Ibis*, 3 Woods, 28, relied upon by proctor for libelants, would be exactly in point, and partly support their pretensions, but for the fact that therein the shipper had no notice of the terms of the charter until after shipment. The case of *Kerford* v. *Mondel*, 5 Hurl. & N. (Ex.) 931, relied upon in *The Ibis Case*, was a case where a clean bill of lading was given which contained no lien for dead freight, and where the contract for shipment did not show notice of any charter-party. It may be that there is some conflict of authority as to the effect to be given against outside shippers of freight on a chartered vessel, so far as liens are concerned, even with notice of the stipulations of the charter-party, but I can see no reason why the rule as laid down in Maclachlan, *supra*, should not be taken as the correct one. If a shipper has notice, let him submit to the contract that furnishes the ship, or take his freight elsewhere. Neither he nor the charterer has the right to complain; the latter because he has pleased to bind himself, and the shipper because if his eyes are open he need not bind himself nor his goods unless he pleases.

It may be conceded for this case that a shipper, without notice of the terms of a charter-party, is not bound, nor his goods, for any liens not given by the law.

In *Gracie* v. *Palmer*, 8 Wheat. 605, it was held that the charterer and master could not, by a contract made with a shipper who acted in good faith, *i. e.*, without knowledge of the charter, destroy the lien of the owner on the goods shipped for the freight due under the charter-party. See, also, *The Schooner Freeman*, 18 How, 182. From all

of which it seems clear that the owner had a clear right to stipulate for a lien on the entire cargo for freight, dead freight, and demurrage; that such stipulation was good against the charterer, and probably good against all shippers with notice; that the master had no right to derogate from the charter-party or jeopardize the liens stipulated therein; and that the ship was not bound to take any cargo furnished by charterer, except according to the terms of the charter-party.

It is clear that if the master had given clean bills of lading, and shippers had been given no notice, the lien given by the charter-party might have been entirely defeated. It follows, therefore, that the master of the Peer of the Realm was not only justified in refusing to sign bills of lading, without adding, "other conditions as per charter-party," but he was pursuing the exact line of his duty in order to protect the owners' interest.

The master's conduct was no breach of the charter-party on the part of the ship, and therefore the libelants have no case. It is urged that they should recover certain advances made as per charter-party. I am unable to see why. The evidence shows great loss to the ship because the charterer failed, without sufficient cause, to furnish cargo. Argument has been made that shippers of cotton cannot, and will not, ship goods without what is called a clean bill of lading. This may be; but I do not see what the court has to do with the matter. If charterers of ships rely on outsiders to furnish a cargo, and such outside shippers require clean bills of lading, let charter-parties be made accordingly. Nothing would be easier, if the parties agree, than that the charter-party should stipulate that the master should give clean bills of lading for all cargo not furnished by charterer, or that the master should give bills of lading as presented, and the courts would undoubtedly enforce such stipulation.

A decree will be entered dismissing libel, with costs.