### F. O. MATTHIESSEN & WIECHERS SUGAR REFINING CO. *v.* GUSI and others.

*(District Court, S. D. New York. January 25, 1887.)*

1. CARRIERS—OF GOODS BY VESSEL—BILL OF LADING—PRESUMPTIONS—EXCEPTIONS—"WEIGHT UNKNOWN"—SHORT DELIVERY.

    The stamping of the bill of lading by the master, with the words "weight unknown," repels the *prima facie* presumption as to the weight shipped, which otherwise arises from the statement of the weight in the margin of the bill of lading; and, in case of alleged short delivery in weight, other proof of the weight shipped must be made.

2. SAME—SEA DAMAGE—EVIDENCE—EXTENT OF LOSS—NEGLIGENCE.

    Where sea damage may arise from different causes, either with or without negligence in the ship, the nature and extent of the damage may be material in determining to which cause it should be assigned. *Held,* in this case, not sufficient damage proved to establish presumptive negligence in the ship.

3. SAME—DAMAGE TO CARGO—DUNNAGE—SWEATING.

    The bill of lading for 4,800 bags of sugar, loaded at Havana, to be delivered at New York, stated in the margin the aggregate net weight. In the body of the bill of lading it was stated, "Weight and contents unknown;" and across the face of the bill of lading there was also stamped, "I do not know the weight or contents, and am not liable for sea damage." Upon a libel filed against the ship, alleging short delivery in weight, and injury through want of dunnage, it appearing that the ship had met with very heavy weather, being for a time nearly upon her beam-ends, when the pumps would not suck; and some loss thereby necessarily arising through drainage in the bilges, without the ship's fault; and only 1 bag being empty, and only 30 bags being apparently "slack;" and the stains upon some 1,600 bags being shown by proof,

and the circumstances, to have arisen mostly from sweating. a sea peril; and no evidence of the weight shipped being given. other than the bill of lading; and the whole number of bags shipped being delivered: *held*, that there was no sufficient proof, either of the amount of loss in weight, or of the number damaged by sea water, as distinguished from sweating, to establish either any actual loss through want of customary and sufficient dunnage, or any negligence of the ship, as the cause of loss.

In Admiralty.

*Sidney Chubb*, for libelants.

*Jas. K. Hill*, *Wing & Shoudy*, for respondents.

BROWN, J.    This libel was filed to recover for loss and damage to 4,800 bags of sugar brought from Havana to New York, in December, 1885. Upon the evidence, it appears that about 1,614 bags exhibited external marks of stain or damage, 30 bags were "slack," and 1 empty. The slack and empty bags, as the proof shows, were not a greater loss than is usual in voyages at that season, and in tempestuous weather. Two severe gales were encountered on this voyage, and for a considerable time the vessel was nearly upon her beam-ends, so that her pumps would not draw. The slack and empty bags came from the bilges. Under the circumstances, this small loss in slack and empty bags shows no evidence of negligence on the part of the ship, since some loss by drainage, under such circumstances, was unavoidable, without any presumptive fault of the ship. Such a loss presumptively falls within the excepted perils of the seas.

There is no sufficient evidence to show any material loss of weight beyond the slack and empty bags. Allowing the very considerable excess of tare claimed by the libelants over that estimated at the custom-house, the actual loss in weight, as compared with the net weight stated in the bill of lading, is but 2,213 pounds, a very small difference; certainly not a proof of negligence, under the circumstances of this voyage. The libelant claims an alleged natural increase in the weight of sugar. But there was no proof on this subject. Some cargoes lose in transit; others gain. Nor is it, in my judgment, competent to charge the ship with a loss of weight upon a mere comparison of the weight stated in the margin of the bill of lading with the estimated proper gain on the voyage. The bill of lading, besides the printed statement, "Weight and contents unknown," had also stamped across its face a special clause, "I do not know the weight, or contents, and am not liable for sea damage." The whole number of bags received was actually delivered. The master testified that he had no knowledge of the weight, except that stated and given to him on making out the bill of lading. I know of no case where, under such circumstances, the bill of lading was treated as sufficient evidence of the weight shipped, although there is such an intimation in the case of *The Sloga*, 10 Ben. 318. But proof was there made of the actual weight put aboard. In the subsequent case of *The Ismaele*, 14 Fed. Rep. 491, under a similar bill of lading, proof of the weight on shipment was held necessary, and this was affirmed on appeal; and even the additional proof taken was held insufficient by Mr. Justice BLATCHFORD. 22 Fed.

Rep. 559. See *Clark* v. *Barnwell*, 12 How. 272, 283; *The Querini Stamphalia*, 19 Fed. Rep. 123.

The English authorities seem to sustain the same view. *Jessel* v. *Bath*, L. R. 2 Exch. 267; *Lebeau* v. *General Steam Nav. Co.*, L. R. 8 C. P. 88, 96; *The Peter der Grosse*, L. R. 1 Prob. & Div. 414; Scrutton, Charter-parties, 52. When the vessel takes no part in ascertaining the weight shipped, and by the bill of lading states "weight and contents unknown," there seems to me no reasonable intendment, from the mere statement of the weight as given by the shipper, that the master means to accept that statement as binding on him, or as any evidence of the weight shipped in case of an ascertained shortage on delivery; or to assume the burden of proving the actual weight shipped in a distant port. So intolerable a burden upon the ship seems to me to afford the strongest presumption of a contrary intent.

In the present case the circumstances are stronger. The special stamping of the words, "I do not know the weight," upon the face of the bill of lading, clearly repels any presumption that the ship was to be held in any degree to the precise weight stated in the margin of the bill of lading. The burden, in case of alleged short delivery, rests, therefore, upon the libelant to prove the weight shipped by other evidence than the bill of lading.

Nor is there sufficient proof of any actual damage to the sugar beyond that incident to the proved sweating, which is a sea peril; though the bags were shown to be stained. None of the libelants, and no person in their employ. who presumptively would have known of the damage to the sugar and the nature and extent of it, were called as witnesses. The very imperfect and casual inspection made by the witnesses for the underwriters is not, to my mind, satisfactory proof that the cargo was damaged otherwise than to a very limited degree through the proved sweating. The respondents' evidence proves that there was sweating apparently sufficient to account for the stains upon most of the bags. The witnesses on both sides say that the stained bags came out from amid others not stained, which is an evidence of sweating, and not of damage from want of dunnage. The evidence as to dunnage is very conflicting; but much of the difference in the opinions of the experts would seem to be explained by the peculiar model of the vessel. The sharp angle of her bottom, it is shown, affected materially the requisites in the details of dunnage, and the depth necessary along the bilges, according to the usual custom in such cases.

The case is one in which, owing to the different causes from which damage may arise, proof of the nature and extent of the damage is essential, in order to determine whether there was presumptively, or in fact, any negligence in the ship. I do not think the libelant has sufficiently established such negligence, (*Six Hundred and Thirty Quarter Casks of Sherry Wine*, 14 Blatchf. 517,) and the libel should therefore be dismissed, with costs.