## THE BARACOA.[1]

### DUMOIS et al. v. THE BARACOA et al.

*(District Court, S. D. New York.   October 24, 1890.)*

1. CHARTER-PARTY—VESSEL NOT IN EXISTENCE—MARITIME CONTRACT.
   The letting by charter of a vessel not in existence, but "to be built, "is a maritime contract as respects the voyages to be made under it, and the guaranties it contains as to speed and draught.

2. SAME—VESSEL "TO BE BUILT"—BUILDING CONTRACT.
   In such a contract the building of the vessel is but a preliminary to the substantial part of the agreement, viz., the delivery of the vessel for navigation as per charter, and a suit for breach of the guaranties of the charter as to speed and draught is enforceable *in rem* in the admiralty.

3. PROCEDURE—JOINDER OF SUITS IN REM AND IN PERSONAM.
   In suits on charters or contracts of affreightment, proceedings *in rem* and *in personam* may be joined.

In Admiralty.   On exceptions to libel.

*R. D. Benedict*, for libelant.

*Wing, Shoudy & Putnam*, for respondent.

BROWN, J.   The libel is brought *in rem* and *in personam* to recover damages for the alleged non-fulfillment of the guaranties contained in a charter of the steam-ship Baracoa to the libelants.   The charter stated that the owners agreed to let, and the charterers to hire, the steam-ship from the time of delivery for 36 months.   The ship referred to is described as a steam-ship "to be built on specifications as per memorandum attached."   The memorandum attached specified a certain draught and a guarantied speed.   The steamer, when built, was tendered to the libelants within the time provided, and at the place substituted by agreement in lieu of that named in the charter, and several trips were performed under it.   The libelants, finding that the draught was greater and the speed less than guarantied, refused acceptance, and filed this libel for breach of the covenants of the charter.   The respondents except on the ground (1) that the contract was one for the building of a ship, of which the court has no jurisdiction; (2) that, as the ship was not in existence at the time of the charter, the contract was not a maritime one; (3) misjoinder of causes *in rem* and *in personam*, and that there is no lien for such damages.

1. The fact that the subject of the charter was a vessel that was to be built does not make the charter any the less a maritime contract, so far as respects the letting of the ship after she should be built, or as respects her performance of the voyages contracted for under the specified guaranties.   The charter, indeed, contemplated a ship to be built; but that was but a mere incident, and preliminary to the essential part of the contract, which was purely maritime, viz., the delivery to the libelant, at a certain future date, of a vessel of certain draught and guarantied speed,

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

for the purposes of navigation during the charter period. The purpose of the contract was not at all the mere building of a vessel in a certain way, but the delivery of a vessel having certain guarantied qualities for service under the charter. The reference to a ship "to be built" I construe as words of mere inducement or description, specifying the vessel to be chartered. Such a contract is a maritime one, and upon the delivery of the vessel, and her running under the charter, she, as well as her owners, are bound by the guaranties contained in the contract. The breach complained of is not the breach of a contract to build, but of the guaranty that the vessel delivered for use under the charter shall be of a certain draught and speed. These guaranties speak from the time of delivery, and form a continuing contract, and the breaches are continuing breaches; and, it being admitted by the exceptions that these guaranties were broken at and from the time of the delivery of the vessel under the charter, and of her entry upon the performance of it, I see no reason why the ship should not be liable *in rem* for the breach of the charter in these respects, as much as for the breach of any other charter obligation, from the time of her entry upon the performance of it. The charter itself furnishes some evidence that it was in the mind of the parties that the ship should be bound for the performance of these guaranties, for the language of the memorandum is that "the steamer * * * guaranties to have a speed of eleven knots," etc. The case of *The Eli Whitney*, 1 Blatchf. 360, was not a case of the breach of any part of the contract contained in the charter. Parol evidence offered to prove parol guaranties was ruled out. The rest of the decision was only to the effect that misrepresentation or deceit as to the ship's capacity, by means of which the written charter had been effected, would not sustain a lien and a suit *in rem*. The present is not a case of misrepresentation or deceit outside of the terms of the charter; but of a breach of an express warranty contained in the charter, materially affecting the performance of the contract. For such breaches of warranty, after the ship has entered upon performance, the ship is liable *in rem*. *The Volunteer*, 1 Sum. 551, 571; *The Tribune*, 3 Sum. 144; *The Hermitage*, 4 Blatchf. 474, 476. Analogous cases are numerous.

2. As respects the joinder of demand for relief *in rem* and *in personam*, the provisions of the supreme court rules in admiralty do not touch libels on charters or on contracts of affreightment. It has long been the practice in this circuit in actions on charters or contracts of affreightment to admit the joinder of both forms of proceeding in the same libel. The subject has been repeatedly considered in this and other courts. *The Zenobia*, Abb. Adm. 48; *Vaughan* v. *Sherry Wine*, 7 Ben. 506, 508, affirmed 14 Blatchf. 517, 519; *The Monte A.*, 12 Fed. Rep. 331, 337; *The J. F. Warner*, 22 Fed. Rep. 342; *The Director*, 26 Fed. Rep. 708, 711; *Joice* v. *Canal-Boats*, 32 Fed. Rep. 553. The exceptions are overruled.