## THE G. R. BOOTH.

### AMERICAN SUGAR–REFINING CO. v. THE G. R. BOOTH.

(District Court, S. D. New York. November 23, 1894.)

CARRIAGE OF GOODS—EXPLOSION—DETONATORS—CUSTOMARY STOWAGE SUFFICIENT.

While the steamship G. R. B. was discharging, an explosion of detonators caused a hole in the ship which let in water which extended to plaintiff's goods in the next compartment, by which they were damaged. The detonators were in cases, so packed as to be customarily stowed and handled like ordinary merchandise, and believed to be harmless. *Held:* (1) That the damage having arisen primarily from sea water, the burden of proof was on the libelant to show negligence in the defendant; (2) that stowage of detonators as ordinary merchandise being proved to be

in accordance with the custom of the country, and without knowledge of their dangerous character, was justifiable and was not negligence, and the libel was dismissed, without costs.

This was a suit in admiralty by the American Sugar-Refining Company against the steamship G. R. Booth for damages by an explosion, whereby sea water was let into the hold, causing injury to libelant's sugar.

Wing, Shoudy & Putnam, for libelant.
Convers & Kirlin, for respondent.

BROWN, District Judge. On the 14th of July, 1891, while the steamship G. R. Booth was discharging her cargo at East Central pier, Atlantic dock, Brooklyn, an explosion occurred in the after-hold when the cargo was nearly all discharged, by which the steamer's iron plates on the starboard side were burst through below the water line, in consequence of which the after-hold was flooded with water. The water made its way thence through the bulkhead into the compartment next forward, where the libelant's sugar was thereby wet, damaged and melted, for which damages the above libel was filed.

Although, upon the contradictory evidence, it is not altogether certain what it was that exploded, it was probably certain cases of "detonators," boxes of which had been stowed in the after-hold, and most if not all of which had been already removed to the dock.

The libelant contends that these boxes of detonators were highly dangerous, and that the ship in stowing them in the lower hold took all risks of explosion and the damages that might be caused thereby. The officers of the ship, however, had no actual knowledge of the shipment of any dangerous explosives; or that these boxes were dangerous, if, indeed, they were so under the ordinary conditions of shipment. They had no mark upon them like "Mit vorsicht," such as is usually put upon goods at Hamburg, to indicate that they were to be carefully handled, although they were marked "Capsules" and "Spring-Capseln," and were specified as "Detonators" in the bill of lading; terms not appreciated by the officers.

I do not think that the liability of the vessel in this case is made out. The explosion did no direct damage to the sugar, nor in any manner directly affected it. By bursting a hole in the side of the ship, sea water was let into the hold, which subsequently made its way among the sugar and damaged it. Such damage is a sea peril. The Xantho, 12 App. Cas. 503, 508. The burden of proof is upon the libelant to show that it might have been avoided by the ship by reasonable care. Clark v. Barnwell, 12 How. 272, 280, 282; Transportation Co. v. Downer, 11 Wall. 129; The New Orleans, 26 Fed. 44. In other words, the question is one of negligence; and in this case, a question of negligence in the reception and stowage of cargo.

But the evidence is not sufficient to show, or to warrant the inference of, any negligence or lack of customary care on the part

of the ship in receiving these boxes, or in stowing them as was done with other cargo in the hold or in the subsequent handling of the cases. The small capsules are so packed in cases, and with such care, as to make it difficult or impossible to produce any explosion by any mode of handling, or by dropping, knocking or pounding. See Mackenzie's Report. They had been long accustomed to be handled by sea and land as ordinary merchandise is handled, and carried in the same manner. They were not known, or considered, or treated, as dangerous cargo. No previous explosion in transit is shown. Prior to this accident, it was usual to carry them indiscriminately with other cargo. Since this accident, it has become customary for steamers to carry them either in the hatches or on the deck; while sailing vessels still stow them below deck.

In the absence of any proof of knowledge of danger, it is sufficient, on a question of stowage, to stow according to the knowledge and experience of the time, and to observe the usages of the time and place. See Baxter v. Leland, 1 Blatchf, 526, Fed. Cas. No. 1,125; Lamb v. Parkman, 1 Spr. 343, Fed. Cas. No. 8,020; The Titania, 19 Fed. 107, 108; The Dan, 40 Fed. 691, 692; The Dunbritton, 61 Fed. 764, 766; Carv. Carr. by Sea, § 96. This was done by the steamship in this case. Why the explosion occurred in this instance can only be conjectured, viz., from some possible detachment of a portion of the fulminate within the capsules, an occurrence previously unknown in transportation, and arising, probably, in the manufacture and packing; certainly not from any fault of the ship. To charge the ship in this case with negligence in care or stowage, would be to make her responsible for what was essentially accidental, and altogether contrary to previous experience and usage, which justified the carriage of these boxes in the same manner in which they were carried, even had the officers fully understood their contents.

The libel must be dismissed, with costs.