O'CONNELL v. ONE THOUSAND AND TWO BALES OF SISAL HEMP.

(District Court, S. D. Alabama.  July 30, 1896.)

No. 743.

1. BILLS OF LADING—ALTERATION BY SHIPPER—ACQUIESCENCE OF MASTER.
    Bills of lading signed after the cargo was all on board contained the words, "Freight and all conditions as per charter party."  The shipper, who supposed the vessel to be under charter, but was ignorant of the terms of the charter party, refused to accept the bills in this form, and in the presence of the master, and with his acquiescence, struck out the words.  *Held* that, notwithstanding a subsequent protest by the master, the contract of carriage was controlled by the bills of lading alone, independently of the terms of the charter party.

2. SHIPPING—DISBURSEMENTS BY SHIPPER AS AGENT FOR CHARTERER.
    Where a shipper, acting also as agent for the charterers, disbursed the ship in a foreign port, *held*, that his consignees were not entitled to deduct the amount of such disbursements from the freight, when the freight was sued for by the shipowners in enforcement of their lien for the charter hire.

This was a libel in rem by William H. O'Connell, master of the steamship Ravensdale, against 1,002 bales of sisal hemp, claimed by Thebaud Bros., to enforce payment of freight.    An opinion was heretofore filed on exceptions to the libel and motion to strike out. 75 Fed. 408.    The cause has now been heard on the merits.

Clark & Clark and Converse & Kirlin, for libelant.
Pillans, Torrey & Hanaw, for claimants.

TOULMIN, District Judge. When this case was before me on exceptions to the amended libel, I overruled the exceptions, holding, in effect, that, on the allegations of the libel, the libelant was entitled to recover the charter hire of the vessel, and had a lien on the cargo therefor. Material allegations in the libel, and on which this ruling was based, were that the shipper had knowledge of the charter (which I construed to mean knowledge of the terms or stipulations of the charter); that the bills of lading signed and delivered to the shipper contained the clause, "Freight and all conditions as per charter party;" and that, subsequent to such delivery, the bills of lading were altered by the shipper, by striking out of them said clause; and that this was done without the knowledge or consent of the master. If these allegations were sustained by the proof, I would still hold that the libelant was entitled to recover the charter hire of the vessel, and had a lien on the cargo for it. But, in my opinion, the proof does not sustain these allegations. The burden is on the libelant to make out his case,—that is, the case set forth in the amended libel, which is a substitute for the original libel; and this he has failed to do. The weight of the evidence is that the shipper presumed and believed that the vessel was operating under a charter party, but that he did not know its terms or conditions; that he was the agent of the charterer, and of the ship to procure cargo for her, to disburse her, and to get her clearance papers, etc.; that he frequently shipped cargoes on her on his own account; and that the cargo involved in this suit was furnished and shipped by him in the usual way. The evidence further shows that the customary rate of freight, and the rate authorized by the charterer, between Progresso and Mobile, was three-sixteenths gold and 5 per cent. added, and that sometimes this was put in the bill of lading, and sometimes it was not. The evidence also is that the shipper did not accept the bills of lading in the form and as signed by the master, and that the master was notified of that fact; and the decided weight of evidence is that the master was present when the clause inserted by him in the bills of lading, to wit, "Freight and all conditions as per charter party," was stricken out by the shipper, and that he assented thereto, and acquiesced in what was done by the shipper, saying that he had put that clause in the bills of lading because he was instructed by his owners to do so. The evidence further shows that the cargo was all on board the ship at the time the bills of lading were signed, and that at the time of the alleged controversy over the character of the bills of lading which the master had signed, and the shipper's refusal to accept them, the ship's clearance papers had already been made out.

The master did not refuse to carry the cargo except according to the terms of the charter party (as expressed by him in the bills of lading) on the refusal of the shipper to accept such bills, and the shipper did not demand the return of the cargo because of the master's claim of right to issue such unusual bills of lading, as the shipper considered them. The Peer of the Realm, 19 Fed. 216; Peek v. Larsen, L. R. 12 Eq. 378. If the bills of lading retained by the shipper were so retained in their altered form (as altered by him)

with the consent or acquiescence of the master, they must be considered as the true and only evidence of the contract. If they were altered and retained·without the master's consent, express or implied, certain it is from the evidence that they were not agreed to and accepted by the shipper in the form in which the master. had signed them. In the latter case there was no express contract made. There was no agreement between the parties, and the ship in that event would be entitled to the customary rate of freight, which is shown to be three-sixteenths gold and 5 per cent. added. From the weight of the evidence, I am bound to find that the master assented to and acquiesced in, if he did not expressly consent to, the change made by the shipper in the bills of lading at the time it was made, whatever he may have thought or done about it afterwards, in the way of protests, etc. I can well see why he should. have protested in view of the instructions from his owners.

My opinion is that the libelant is not entitled to recover the charter hire and other charges provided for in the charter party, but that he is entitled to recover the freight at the rate named, and that without any deduction for what is called "advances on freight." It appears from the evidence that the shipper in this case (Agentia Commercial) was the charterer's agent, and disbursed the vessel for and on account of the charterer; that it kept no account with the charterer, but that it was usual to collect such disbursements from the freights, and, as some of the officers of the Agentia Commercial say, from the consignees. As long as the freights belonged and were going to the charterer, any disbursements made on his account or on account of the ship by his agent should properly and justly be deducted from or paid out of the freight. But when the charterer is not entitled to receive the freight over the shipowner, as in this case, it seems to me that the advances for disbursements could not properly or reasonably be deducted from the freight as against the shipowner. Were these advances for the ship made on the credit of the ship? Was there any contract, express or implied, by which the agent, who happened to be the shipper in this instance, was to be reimbursed these advances as against the shipowner? The contract between the shipper and the ship is contained in the bill of lading, and there is· nothing therein about port charges, etc., or any deduction being made from the freight on that account. It seems. to me that the claimants are not 'entitled to deduct from the freight for any such advances as are claimed. It is not a set-off against the freight. It should be treated rather as a loan than as prepayment of freight, or a claim against the charterer. At least, it is a matter with which the consignees, Thebaud Bros., have nothing to do.

The libelant may have a decree for the freight, and, if the amount is not agreed on, there must be a reference to ascertain the amount. The libelant will also be decreed costs, except the costs for filing the amended libel and the amendment to the libel, which was offered on the trial, and which the court allows to be filed; also, the costs for the first writ of seizure and other costs growing out of the same, such as the costs of publication and watchman's fees, if any, up to the time of the second seizure. All other costs are to be taxed

against the claimants. Had there been any demand for the goods and tender of freight, all costs subsequent thereto would be taxed to the libelant.