### THE G. R. BOOTH.

(Circuit Court of Appeals, Second Circuit. December 14, 1898.)

#### No. 91.

SHIPPING — LIABILITY OF CARRIER FOR DAMAGE TO CARGO — CONSTRUCTION OF BILL OF LADING.

    A clause in a bill of lading exempting the carrier from liability for loss or damage "occasioned by causes beyond his control," following the enumeration of a large number of specific causes, including perils of the sea, fire, accidents of navigation, and others of like nature, which would be covered by such clause if given a broad construction, must be restricted in meaning to causes of the same general nature as those particularized. As so construed, such clause does not relieve the carrier from liability for damage occasioned while the vessel was in port and being unladen, by the explosion of certain detonators forming a part of the cargo, which made a hole in the side of the ship, through which the sea water entered and injured the goods, where the detonators were shipped and handled in the usual way, and the explosion was an unusual, and even unprecedented, occurrence.

Appeal from the District Court of the United States for the Southern District of New York.

This was a suit in admiralty by the American Sugar-Refining Company against the steamship G. R. Booth for damages for injury to cargo while the ship was discharging in port, caused by the explosion of certain detonators, which constituted a part of her cargo, tearing a hole in the side of the ship, through which the sea water entered and damaged libelant's sugar. Libelant appealed from a decree dismissing its libel. The supreme court, in answer to questions certified by this court, held that the damage was not occasioned by a peril of the sea, nor by an accident of navigation, within the meaning of the bill of lading. 19 Sup. Ct. 9.

Harrington Putnam, for appellant.

J. Parker Kirlin, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The supreme court having answered the questions heretofore certified by this court adversely to the contention of the appellee, the cause is now here for final disposition; and the primary question is whether the steamship is liable

to the owner of goods shipped for transportation to, and delivery at, New York, for damage caused to the goods, while the steamship was being discharged, by an explosion of certain detonators, part of the cargo shipped by other owners, and which was then being unladen. This court, having reached the conclusion that under the particular circumstances of the case the steamship was not negligent in taking the detonators on board or in causing the explosion, certified to the supreme court the question whether the loss to the libelant's goods was occasioned by a peril of the sea, the goods having been injured by the influx of sea water through a hole in the vessel caused by the explosion. It is now conceded by the appellee that there should be a decree for the libelant unless the steamship is relieved from liability by an exemption in the bill of lading under which the goods of the libelant were shipped, which was not relied upon in the court below (64 Fed. 878), or in this court at the original time of argument of the cause. The bill of lading reads as follows:

"The ship and carrier shall not be liable for loss or damages occasioned by the perils of the sea or other waters; by fire from any cause or wheresoever occurring; by barratry of the master or crew; by enemies, pirates, robbers, or thieves; by arrest and restraint of princes, rulers, or people; by explosion, bursting of boilers, breakage of shafts, or any latent defect in hull, machinery, or appurtenances; by collision, stranding, or other accidents of navigation, of whatsoever kind, even when occasioned by negligence, default, or error in judgment of the pilot, master, marines, or other servants of the shipowner; nor for any loss or damage caused by heat, decay, putrefaction, vermin, rust, sweat, change of character, shrinkage, leakage, breakage; nor for any loss or damage arising from the nature of the goods or the insufficiency of the packages; nor for any country damages; nor for the obliteration, errors, insufficiency, or absence of marks or numbers, address, or description; nor for risk of craft, hulk, or transshipment; nor for any loss or damage caused by the prolongation of the voyage; nor for any loss or damage occasioned by causes beyond his control."

It is upon the last clause that the appellee relies, and the contention is that, the explosion having been without negligence on the part of the carrier, the damages in question are a "loss or damage occasioned by causes beyond his control."

Manifestly, the clause was not intended to relieve the carrier for any loss or damage whatever occasioned by causes beyond his control, and without negligence; otherwise it would take the place of nearly every other cause of loss and damage specifically mentioned in the preceding clauses of the contract. Loss or damage occasioned by the perils of the sea would be occasioned by causes beyond the control of the carrier; so would losses arising by accidents of navigation of whatsoever kind; so would losses or damage arising from the nature of the goods; so would losses arising from insufficiency of address or description; and so would losses caused by the (unavoidable) prolongation of the voyage. If it had been the purpose of the clause to relieve the carrier from liability occasioned by any of these causes, they would not have been made the subject of particular enumeration. Some effect must be given to it, but the instrument, having been prepared by the carrier, is not to be extended in his favor beyond the strictest meaning of its

terms. This can be done by reading it as intended to apply to causes of loss ejusdem generis with those particularized, and we think it exempts the carrier only from other causes of loss or damage of a like nature to those enumerated and beyond his control.

The cause of the loss or damage in this case was a very peculiar one. The detonators exploded while being handled carefully, and from no extraneous cause. As this court stated in its certificate to the supreme court:

"They were made in Germany, and were packed according to the regulations prescribed by German law, adopted and enforced for the purpose of eliminating any risk or danger in handling or transporting them. When thus packed, the immunity from danger of any accidental explosion is supposed to be complete, and they are transported and handled like ordinary merchandise, by carriers and truckmen, without the use of any special precautions to avoid risk. They do not explode when subjected to violent shock, as when thrown from such a height above the ground as to shatter in fragments the cases in which they are packed. They were customarily stowed and transported in vessels like ordinary merchandise, indiscriminately with the other cargo; and until the present occurrence, although millions of cases have been shipped and carried to all parts of the world, no accident has happened so far as known."

By the explosion a large hole was made in the side of the ship, in consequence of which sea water rapidly entered and damaged the goods of the libelant stowed in the hold.

Such a cause of loss or damage does not seem to be of a like nature to any of the others mentioned in the bill of lading. It was one so uncommon and unique in its character as to be as dissimilar as any which could be conceived. We conclude that the libelant is entitled to a decree.

The decree of the district court is accordingly reversed, with costs, and with instructions to ascertain the amount of the libelant's damages, and decree accordingly, with costs of the district court.