### THE BUENOS AIRES.

#### T. M. DUCHE & SONS, Inc., et al. v. COMPANIA TRASATLANTICA.

District Court, S. D. New York.

Jan. 28, 1931.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and F. Herbert Prem, both of New York City, of counsel), for libelants.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for respondent.

WOOLSEY, District Judge.

I sustain the exception to the libel herein on the ground that it does not state a cause of action against the respondent.

As an amendment would not serve any purpose in the case, I will enter a decree dismissing the libel with costs to the respondent.

I. The libelants herein are purchasers for value of three order bills of lading issued by the respondent for the carriage to New York of 500 boxes of shelled almonds shipped on the respondent's steamship Buenos Aires at Alicante, Spain, on or about March 20, 1930.

The three bills of lading, photostat copies of which are annexed to the libel, are alike in terms. They each acknowledge the receipt of a certain number of boxes of almonds of which the weight and contents were noted as declared by the shippers. On the face of each bill of lading also appeared a notation, "Weight and contents unknown." In the body of each bill of lading was the provision that the carrier was "also not responsible for

the contents, weight and quality of the packages."

The libel is supplemented by a stipulation between counsel for the respective parties, made only for the purpose of argument on this exception. Annexed to the stipulation is a translation of the bills of lading issued for the shipments in question here.

It is stipulated (inter alia):

(1) That neither the boxes in question herein, which were received, transported, and delivered by the respondent, nor their contents, sustained any physical damage while in the possession of the respondent, or prior thereto, nor was there any shortage in the contents of any of the said boxes upon delivery thereof by the respondent to the libelants at New York, and the libelants make no such claim herein.

(2) That the bills of lading attached to and made a part of the libel herein acknowledged the receipt of 500 boxes of shelled almonds, and that the respondent delivered to the libelants at New York the same 500 boxes of shelled almonds that it received from the shippers at Alicante, Spain, and in the same order and condition as when received.

(3) That the capacity of a standard box for the carriage of almonds, as referred to in article sixth of the libel herein, is 28 pounds net of shelled almonds, and that the dimensions of such a box are as follows: Length, 23½₆ inches; width, 11½₆ inches; and depth, 6⅞ inches.

(4) That the capacity of the boxes in question, which were received, transported, and delivered by the respondent herein, was 20 pounds net of shelled almonds, and that the dimensions of such boxes were as follows: Length, 22⅞ inches; width, 10⅝₆ inches; and depth, 5⅝ inches.

The real gravamen, therefore, of this libel is that the libelant consignees did not receive as many pounds of almonds as they thought they were buying.

II. The question herein is whether the libelant consignees were deceived by the shipowner respondent so that it is precluded by any estoppel or otherwise from showing the facts of this case which obviously will prevent recovery from it; for there was no shortage of, no outage from, no damage to, these shipments. The shipments here involved were received and delivered in the same condition. If these facts can be brought out, the respondent shipowner must obviously prevail.

The libelants allege and contend that, because the bills of lading recited the receipt of boxes of almonds, it meant boxes of the usual size containing about 28 pounds each, and that consequently, as the boxes did not and could not contain so much, the shipowner is estopped to show that the boxes received and delivered as received were of the size received.

■ I think there is not any basis for such a contention. The receipt in the bill of lading was not in any way untrue. Guarded with the clause "weight and contents unknown," and accompanied by the recital, weight and contents declared by shipper, and the provision that the carrier was "not responsible for the contents weight and quality of the packages," the bills of lading could not properly have misled any purchaser thereof or justified his claiming that he was lulled by the terms thereof into thinking he was buying anything except a document of title for a certain number of boxes supposedly containing almonds, but for the weight and contents of which the shipowner was unable and, consequently, unwilling to vouch.

In The Querini Stamphalia, 19 F. 123, Judge Addison Brown of this court, in dealing with the effect of such clauses as to weight and contents as this bill of lading contained, said, at page 124:

"The evidence shows satisfactorily that all the iron was delivered which was received on board the vessel. No question is made but that this would be a good defense as against the shipper. The libelant, the Credit Lyonnais, however, contends that as bona fide indorsee of the bill of lading for value, it has a right to rely upon the representation as to the amount of iron shipped contained in the bill of lading, and a right to hold the vessel and her owners for the delivery of this amount. The bill of lading, however, expressly states that the 'quantity, weight, and contents are unknown.' In the body it recites the receipt of 406,000 kilos; and this is equal to only 400 tons. Only about 362 tons were delivered. In the margin of the bill of lading, however, is an entry 'freight to be paid for 410 tons,' etc. Numerous authorities establish the rule that a clause in the bill of lading reciting that the weight or quantity is unknown qualifies the effect of other statements as to the amount or weight; and authorizes proof to show that a less amount was in fact received on board. Clark v. Barnwell, 12 How. 272 [13 L. Ed. 985]; 630 Quarter Casks of Sherry, 7 Ben. 506, 14 Blatchf. 517 [Fed. Cas. No. 12918]; Shepherd v. Naylor,

71 Mass. [5 Gray] 591; Kelley v. Bowker, 11 Gray, 428 [71 Am. Dec. 725]; The Nora [D. C.] 14 F. 429.

"In the cases on this subject I find no distinction made in favor of an indorsee of a bill of lading. Most of the cases above cited are those of such an indorsee. Nor do I perceive any reason why any such distinction in his favor should be made; for upon the face of the bill of lading itself he has notice of the qualification which authorizes the master to show that a less amount was actually received. He cannot be, therefore, in the legal sense, a bona fide holder relying upon a representation by the master of a specific amount received on board. There is no room, therefore, for any such estoppel as exists in favor of a bona fide indorsee where no such qualification appears on the face of the bill of lading. Bradstreet v. Heran, 2 Blatchf. 116 [Fed. Cas. No. 1792a]; Meyer v. Peck, 28 N. Y. 598; 112 Sticks of Timber, 8 Ben. 214 [Fed. Cas. No. 10524].

"The case of Jessel v. Bath, L. R. 2 Exch. 267, is almost identical with the present. There the plaintiff was the assignee for full value and bona fide holder of the bill of lading of goods shipped on the defendant's vessel, and brought his action to recover for a short delivery of manganese. The bill of lading was similar to the present, stating 'weight, contents, and value unknown.' The court unanimously held that the action could not be maintained, either at common law or on the statute of 18 & 19 Vict., it appearing that the defendants delivered all that they had received, though less than the number of kilogrammes stated in the bill of lading. Kelly, C. B., says the bill of lading 'may be reasonably and fairly read as meaning that a quantity of manganese had been received on board, appearing to amount to thirty-three tons, but that the person signing the bill would not be liable for any deficiency, inasmuch as he had not in fact ascertained, and therefore did not know, the true weight.'

"Martin, B., says: 'The person, therefore, signing the bill of lading by signing for the amount, with this qualification, "weight, contents, and value unknown," merely means to say that the weight is represented to him to be so much, but that he has himself no knowledge of the matter. The insertion of the weight in the margin, and the calculation of freight upon it, does not carry the matter any further; he calculates the freight, as it is his duty to do, upon the weight as stated to him. The qualification is perfectly reasonable, and I do not understand how a statement so qualified binds any one.'

"Bramwell, B., says: 'This document, though apparently contradictory, means this: A certain quantity of manganese has been brought on board, which is said by the shipper, for the purpose of freight, to amount to so much, but I do not pretend or undertake to know whether or not that statement of weight is correct. On a bill of lading so made out I think no one could be liable in such an action as the present.'

"These cases seem decisive on this branch of the present controversy."

To the same effect is McKay v. Ennis (D. C.) 37 F. 229, 231, 232. Cf. also Vanderbilt v. Ocean S. S. Co. (C. C. A.) 215 F. 886, 889, and F. O. Matthiessen, etc., Sugar Refining Co. v. Gusi (D. C.) 29 F. 794, 796.

Furthermore, the shipowner here was not guilty of the breach of any duty of perception in regard to the size of the boxes in which the almonds were shipped.

A sample of the so-called normal sized almond box and of the somewhat smaller box in which these shipments came have been submitted to me. The difference in their size is not challenging unless they are somewhat carefully compared.

But, quite aside from this approximate physical likeness, if the size and shape of the boxes had been wholly changed from the normal there would not have been any duty on the shipowner to inquire into the dimensions of proper packages offered for shipment.

It is well settled that a common carrier is not bound to know grade marks; or to take any note of any marks on packages, even of stowage directions on them, The G. R. Booth (D. C.) 64 F. 878, 880, 885; The New Orleans (C. C.) 26 F. 44, 45, 46; nor is he bound to inquire into the nature of the goods shipped, The Nitro-glycerine Cases, 15 Wall. 524, 535, 536, 21 L. Ed. 206; The G. R. Booth (D. C.) 64 F. 878, 879; Dinsmore v. Louisville, etc., R. R. Co. (C. C.) 3 F. 593, 605; Crouch v. Railway Co., 14 Common Bench 291; Hutchinson on Carriers, § 439.

III. The situation here, therefore, is quite different from that involved in my decision of The Carso, 43 F.(2d) 736, 1930 A. M. C. 1743, 38 Lloyds List Law Reports, 22, where there was an affirmative false statement in the bills of lading as to the good condition on shipment of packages then actually in a bad condition, which the shipowner saw, noted, and then lied about.

The instant case involves a controversy in international trade solely between the foreign seller and the domestic buyer of goods,

in which the shipowner is wholly innocent of the breach of any duty laid on him by the law.

A final decree dismissing the libel, with costs, may be presented for settlement on two days' notice.