## THE KERLEW.
## THE METTE JENSEN.

District Court, S. D. New York.
March 25, 1924.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating and Donald D. Geary, both of New York City, of counsel), for libelant.

Burlingham, Veeder, Masten & Feary, of New York City (Roscoe H. Hupper, of New York City, and Carl G. Stearns, of Houston, Tex., of counsel), for claimants.

GODDARD, District Judge.

These are two libels in rem by J. Aron & Company, a New York corporation, against the steamships Mette Jensen and Kerlew to recover the sums of $204,332.49 and $85,775.-16, respectively, for damages to shipments of refined sugar in cases delivered by said steamers to the libelant in New York, short and in a badly damaged condition during July, August, and September, 1920. The Kerlew libel alleges that on or about June 30, 1920, Cohrs & Amme shipped and placed on board the steamship Kerlew, at Hamburg, 5,721 cases of refined sugar in good order and condition, to be carried by the said steamship to the Port of New York and there delivered in like good order and condition as when shipped, unto the order of Cohrs & Amme, the shippers aforesaid; that bills of lading were duly issued for the cargo and then and there delivered to the shippers by the duly authorized agents of the steamship Kerlew; that thereafter the said steamship

Kerlew, having on board the said merchandise, arrived in New York on or about July 19, 1920, and made delivery of a portion of said merchandise, but not in like good order and condition as when shipped; that a large number of the said cases of sugar were smashed and broken and the contents slack and missing; that the said merchandise was seriously damaged by contact with dirt and other foreign substances by and through the negligence of the said steamship Kerlew, her owners, charterers, and agents, in respect of the loading, stowage, custody, and care of said merchandise.

The libel also alleges that prior to the arrival of the said steamship Kerlew at the Port of New York, Cohrs & Amme duly indorsed the said bills of lading and delivered the same for value to the libelant, who became and still remains the lawful owner of the said merchandise; that by reason of the failure of the said steamship Kerlew to deliver the said merchandise in like good order and condition as when received, and by reason of the negligence of the steamship Kerlew, her owners, charterers, and agents, and by reason of the damage aforesaid, the libelant has sustained damage in the sum of $85,755.16.

The Mette Jensen libel alleges that on or about the 25th day of June, 1920, Cohrs & Amme shipped and placed on board the steamship Mette Jensen, at Hamburg, 14,279 cases of refined sugar in good order and condition to be carried by the said steamship Mette Jensen to New York and there delivered in like good order and condition unto the order of Cohrs & Amme; that bills of lading for the said cargo were duly issued and then and there delivered to the shippers aforesaid by the duly authorized agents of the steamship Mette Jensen; that the said steamship Mette Jensen, with said cargo on board, arrived in New York on or about July 17, 1920, and made delivery of a portion of the said merchandise but not in like good order and condition as when shipped; that a large number of said cases were smashed or broken, the contents of a number of cases slack and missing, and said merchandise was injured and damaged by contact with dirt and other foreign substances by and through the negligence of the said steamship Mette Jensen, her owners, charterers, and agents, in respect of loading, stowage, custody, and care of the said merchandise.

That prior to the arrival of the said steamship Mette Jensen at New York, Cohrs & Amme duly indorsed said bills of lading and delivered the same for value to the libelant, who became and still remains the lawful owner of the said merchandise, consisting of 14,279 cases of refined sugar.

That by reason of the failure of the said steamship to deliver the merchandise in like good order and condition as when received, and by reason of the negligence of the steamship Mette Jensen, her owners, charterers, and agents, and by reason of the damage aforesaid, the libelant has been damaged to the exent of $204,332.49.

To the libel of the Mette Jensen, an answer was filed by George Johannes Ingerslov Nielson as master and claimant.

To the libel of the Kerlew, an answer was filed by the American Ship & Commerce Navigation Corporation, as owner and claimant.

The answers are substantially identical.

They admit the shipment in each case and the issuance and delivery in each case of bills of lading to the shippers, Cohrs & Amme, and that upon delivery at New York, some of the cases of sugar were broken and some cases were slack.

In each answer the claimants allege that the cargo was well and carefully loaded, delivered, and cared for; each answer sets up that the bills of lading, pursuant to which the cargo was shipped, provided, among other things:

"Second: The shipowner is not responsible for damage, injury and loss arising from: * * * perils of the sea * * * shrinkage, breakage * * * or consequences resulting from these causes, * * * or damage of any kind brought about by the inherent nature of the goods loaded or by the packing being insufficient, weak or contrary to regulations. * * * "

The answers then allege that if the libelants sustained any damage, which each claimant denies, same was due to perils of the sea, shrinkage, breakage, or insufficient or weak packages, and neither said steamships nor the claimants are liable therefor under said bills of lading and under the Act of Congress of February 13, 1893, known as the Harter Act (46 USCA §§ 190–195).

On May 8, 1920, the libelant, J. Aron & Company, Inc., of New York, entered into a written contract, with Czecho-Slovak Sugar Export Company, Limited, for the purchase of 1,000 tons of cube sugar in cases of 50 kilos net. The price of the sugar was $44 per hundred kilos net, f. o. b. Hamburg, by cable transfer against ocean bills of lading. The contract further provided that the pay-

ment was to be effected through irrevocable credits of a New York Bank, which credits were to be confirmed to the seller by the bank. Pursuant to these provisions, the libelant opened the two credits, each one covering 500 tons of sugar purchased. The total quantity of 1,000 tons was to be packed in cases of 50 kilos net, which would amount to 20,000 cases.

On or about June 25, 1920, at Hamburg, 14,279 cases were loaded on the Mette Jensen, and two bills of lading, dated June 25, 1920, were issued for the master by the Hamburg-American Line; one bill of lading was for 10,000 cases and the other bill of lading was for 4,279 cases. The remainder of the 20,000 cases, amounting to 5,721 cases, were loaded on the steamship Kerlew. On June 30, 1920, a bill of lading was duly issued for the master by the agents, the Hamburg-American Line, for 5,721 cases. The bills of lading recited that the sugar was "shipped, in apparent good order and condition by Cohrs & Amme" and agreed to deliver the merchandise in like good order and condition at New York unto the order of the shipper. At the top of the bills of lading are printed in large letters the words, "Kerr Steamship Co., Inc.," and beneath these words are printed in slightly smaller letters, "Hamburg-American Line, Agents." The three bills of lading in question are signed with a printed stamp, as follows: "For the Captain, Hamburg-American Line, Freight Department." Beneath the printed stamp is an illegible signature.

Thereafter, the clean ship's bills of lading were presented by the shippers to the Hamburg banks, which were acting correspondents of the New York banks under the letters of credit previously opened, and on or about July 7, 1920, libelant was informed by the New York banks that the bills of lading had been received by the banks in Hamburg; that the banks in Hamburg had paid the shippers for the sugar against the clean bills of lading. In response to this notice of July 7, 1920, J. Aron & Company, Inc., paid their bankers in New York the sum of $221,837.75 representing the purchase price paid to the sellers by one of the Hamburg banks for the clean Kerlew bill of lading for 5,721 cases, and the clean Mette Jensen bill of lading for 4,279 cases.

On July 13, 1920, J. Aron & Company, Inc., paid the New York bank $221,100, representing the purchase price paid by the other Hamburg bank for the Mette Jensen clean bill of lading for 10,000. Subsequently the original clean bills of lading covering the shipments of the Kerlew and Mette Jensen were delivered by the banks to Aron & Company, Inc., in New York.

The representatives of Aron & Company, Inc., did not see the sugar before it left Germany.

The Mette Jensen arrived in New York on July 19, 1920, and docked at the pier on Fifty-Seventh street, Brooklyn; the Kerlew also arrived on July 19, 1920, and docked at Pier 4, Army Base, Brooklyn.

Upon discharging the cargo from the Jensen and also from the Kerlew, it was found that many of the cases either came apart or were broken, and that the contents had come out. The evidence is convincing that the cases were made of too light material and were insecurely fastened, and were too frail to stand ordinary handling and stowage incidental to an ocean voyage.

It also appears that the shippers, in exchange for clean bills of lading, incorrectly setting forth the apparent good order and condition of the sugar, gave letters of indemnity holding the steamers harmless against loss owing to the cases being of too frail a nature to stand an ocean voyage.

On July 27, 1920, the libelant made claim to the steamer's New York agent for the damage, and on the same day received the following letter from the Kerr Steamship Company, Inc.:

"July 27, 1920

"Messrs. J. Aron & Company, Inc.,
   "95 Wall Street,
   "New York, N. Y.
"Dear Sirs:

"We beg to acknowledge receipt of your favor of July 27th in which you state that the sugar tablets ex the S.S. "Mette Jensen" and S.S. "Kerlew" are being discharged, instead of in cases as called for in the bill of lading, in bulk and put into bags, and that you intend to hold this Company responsible in the event of any loss.

"While we regret that this sugar is being discharged in that condition, nevertheless, our agents at Hamburg have received from the shippers letters of indemnity holding the steamers harmless in the event of this sugar being discharged in the manner which you prescribe owing to the cases being of too frail a nature to stand an ocean voyage.

"This seems to be a matter, which should be adjusted between your goodselves and the shippers.

"Will you please advise from whence you received the information that our employees

are discharging this sugar without any regard for the protection of the goods.

"Very truly yours,

Kerr Steamship Co., Inc.,

"W. Goeppert

"Manager Inward Freight & Claim Dept."

The bills of lading, which are admitted by counsel for claimants to be the ship's bills of lading, have printed on the top, "Kerr Steamship Co., Inc., Hamburg American Lines, Agents." The Kerr Steamship Company, Inc., entered the Kerlew and Jensen in the New York Custom House under their own name on July 19th. The master of the Kerlew, in an official manifest, filed in the New York Custom House, made oath that the Kerr Steamship Company, Inc., was the owner of the Kerlew. It is admitted by the claimants that the Kerr Steamship Company, Inc., was operating the Kerlew. The Kerr Steamship Company, Inc., advertised the Kerlew and Jensen as general ships in the New York newspapers over the name Kerr Steamship Company, Inc. They demanded and received payment of the freight on each vessel. The claim agent of the Kerr Steamship Company, Inc., admitted that the Kerr Steamship Company, Inc., were the agents of the Kerlew. The Kerr Steamship Company, Inc., and the Kerr Navigation Company, the latter being the registered owner of the Kerlew, had offices together in New York, and called no witnesses to deny the relationship. The Hamburg-American Lines were the agents of the ships at Hamburg. It was the charterer of the Jensen. The Hamburg-American Lines was advertised in the Hamburg papers as the agent of the ships.

The evidence is also conclusive that the ships were negligent with respect to the stowage, care, and delivery of the shipments in view of the known frail condition of the cases. The sugar, which was in cases, the side boards of which were only three-eighths inch in thickness and the end pieces three-fourth inch, each case containing 128 pounds of sugar, were about 30 inches long, 14 to 16 inches wide and 9 to 10 inches deep. Such handling and stowage as they received would have been likely to cause the cases, which were of very light material and fastened together with too few and too small nails, to break and come apart, and an unusually large number of them did. I think not only is the testimony of witnesses convincing, but it is reasonable to, assume that it was their stowage and handling that caused this, for it is hardly to be supposed that the ship received a cargo with so many cases broken and contents loose, as were discharged on the dock in Brooklyn. Moreover, their bills of lading state they were in good condition.

" * * * A carrier, who accepts goods of a nature which requires special care in their stowage, must exercise such care, and, failing to do so, is liable for the damage caused thereby, even where the character of the damage is within the exception from liability contained in the bill of lading." The San Guglielmo (D. C.) 241 F. 969, 977; Doherr v. Houston (D. C.) 123 F. 334, affirmed (C. C. A.) 128 F. 594.

There is no testimony to show that the claimants used more care than is ordinarily used in stowing or discharging the cargo, notwithstanding they knew of the frail condition of the cases. Possibly this can be explained by the fact that the ship had obtained letters of indemnity from the shippers to protect them from any claims.

Libelant's claim for loss of damages having been repudiated on July 27, 1920, on the ground that the shippers had given letters of indemnity holding the ships harmless in the event of the sugar being discharged in a damaged condition, owing to the cases being too frail, seems to me to bring them under the rule laid down in the case of Ohio & M. R. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Luckenbach Steamship Company, Inc., and Luckenbach Company, Inc., v. W. R. Grace & Company (C. C. A.) 267 F. 676, 679; and Robertson v. Garvan (D. C.) 270 F. 643, at page 649.

Claimants contend that this rule does not apply to the case at bar for the reason that the Kerr Steamship Company, Inc., was not the proper party to address any claim for damage to, or had authority to bind claimants in this respect; but the record fully justifies the conclusion that the Kerr Steamship Company, Inc., was the agent of the steamers, was the proper party to whom the claim should be submitted, and did have the authority to repudiate the claim.

It is also to be noted that the claimants contend that no one had authority to bind the steamers by the issuance of a false bill of lading, yet the claimants themselves set up the same bills of lading as contracts limiting the steamers common-law liability. They contend that the ships were relieved from the liability as common carriers for losses and particularly for the damage sustained in the present instances by reason of the second paragraph of the bills of lading, releasing them from damage as a result of insufficient packing, breakage, etc., and the

Act of Congress dated February 13, 1893, supra.

The libels are ordinary libels in rem to recover for damage to cargo and are not brought on the theory of fraud. It is the ships themselves who endeavor to take advantage of the false statements in their bills of lading. The shipments were refused by the ships because of the frail nature of the packages until the letters of indemnity were given to them; so they certainly knew that the statements in the bills of lading "shipped in apparent good order and condition" were not true, and considered the sugar to be in such an unsatisfactory condition and likely to become seriously damaged that they wanted protection. Certainly the libelant should not be prejudiced because the ships delivered to them false bills of lading which they relied on and acted upon, and which the ships knew were false. To hold otherwise would be putting a premium on false bills of lading. Higgins v. Anglo-Algerian S. S. Co., Ltd. (C. C. A.) 248 F. 386; N. Y. Millinery & Supply Co. v. Hamburg-Am. P.-A.-Gesellshaft (D. C.) 171 F. 557. The ships were not compelled to accept a cargo insecurely packed; if they did so, and as a result of their handling the goods were damaged, certainly as between this libelant and themselves, it is only fair that they should stand such loss. They apparently preferred to assume this risk with an indemnity from the shippers, for they issued clean bills of lading.

Furthermore, the claimants could not claim the benefit of the exemptions in the bills of lading since they themselves had breached this very contract. The St. Johns N. F. (C. C. A.) 280 F. 553, affirmed 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201; The Sarnia (C. C. A.) 278 F. 459; Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto et al. (C. C. A.) 282 F. 235; The St. Paul (D. C.) 277 F. 99, 106.

Accordingly, a decree may be entered in favor of the libelant in each action and against the respondent in each action, with a reference to a commissioner to ascertain the damages.