## SWITZERLAND GENERAL INS. CO. v. NAVIGAZIONE LIBERA TRIES-TINA S. A.

District Court, S. D. New York.
March 6, 1936.

Bigham, Englar, Jones & Houston, of New York City (F. Herbert Prem, of New York City, of counsel), for libelant.

Loomis, Williams & Donahue, of New York City (Homer L. Loomis, of New York City, of counsel), for respondent.

GODDARD, District Judge.

This suit is brought to recover for damage to a consignment of sixty-seven cases of cheese shipped from Naples on the steamship Carso, owned and operated by the respondent, under a bill of lading dated September 29, 1926, consigned to the order of the Bowery & East River National Bank at New York or assigns. The bill of lading described the merchandise as being "in apparent good order and condition" and actually on board respondent's vessel, which the carrier knew was false in both particulars as is evidenced by the notations on the receipts issued by its chief officer on the Carso, when the cases of cheese were received on board the Carso from barges in the Bay of Naples. A letter of indemnity was also received from the shipper by the carrier to protect it from loss against claims made as a result of issuing the clean bill of lading. The consignment was landed in New York November 6th of that year. Upon examination by the consignee, after discharge, the cases were found to be heavily stained by their contents and the cheese covered with maggots and pupae skins, the loaves of cheese having lost practically all of their butter fat and damaged in the amount of $1,496.67.

The Carso on the same voyage discharged a number of shipments of cheese similarly damaged. The owners of the other shipments brought suit and recovered against the vessel and her owners. The consignee-owner of the shipment now involved, instead of bringing a similar suit, filed a claim with his marine insurer, the Switzerland General Insurance Company, the libelant herein, which declined to pay the claim as libelant's investigation had established that the cheese was not in good condition when shipped, its policy covering only damage occurring after loading on board the vessel. Suit was then filed by the assured against libelant on September 3, 1931. The case was tried and resulted in a judgment in favor of the assured on June 22, 1931, which was affirmed on appeal on March 6, 1932, and the judgment satisfied on May 25, 1932. Thereafter the libelant on June 13, 1932, filed this libel under its rights acquired by subrogation.

It has been stipulated that similar claims for damages were passed upon by the Circuit Court of Appeals of this Circuit in the case of The Carso, 53 F.(2d) 374, and that the shipment in the case at bar falls within the group of 468 cases of cheese referred to on page 377 of the opinion of the Carso Case. It has also been stipulated that the libelant is entitled to a final decree for $1,496.67 with interest from the date of payment, unless the libelant is precluded by the clauses in the bill of lading limiting the time for bringing action to one year.

Section 17 of the bill of lading provided that "any action arising thereunder should be brought within one year following the landing of the merchandise at New York"; and section 22 incorporated the rules of the Carriage of Goods by Sea of 1924, article III, paragraph 6, one of which provides:

"In any event the carrier and the shipper shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered."

The libelant contends that this limitation does not deprive it of its right to re-

cover its loss because the carrier had in its bill of lading misrepresented the condition of the merchandise by stating it to be "in apparent good order and condition" and actually on board respondent's vessel.

While it is quite true that under the policy of insurance issued by the libelant to its assured, the consignee, it might have paid the loss at once and become subrogated to the rights of the assured against the Carso; but the rights of its assured had not been adjudicated nor the claim of the libelant against this respondent established until after the one year period had expired.

The consignee's suit against the libelant and the libelant's suit to recover from the respondent are the result of and were made necessary by the respondent's own act. It represented that the merchandise was in apparent good order and condition when it knew it was not. Relying upon the representations the funds were advanced and because the merchandise was not in the condition represented, the libelant has been compelled to reimburse the consignee. Certainly the libelant should not be deprived of its ordinary right to require the respondent to stand the consequences of the respondent's own misrepresentation, nor should the respondent escape through a clause in a contract, which says that suits against respondent must be brought within one year, when respondent's own wrongful acts have produced both the loss and the conditions which made compliance within the time limit practically impossible. It cannot gain immunity by its own wrongful act. To be more definite, the respondent is, in my opinion, not entitled to the benefit of the clause limiting the time for suit against it to one year in view of the circumstances.

Judge Augustus N. Hand, writing for the Circuit Court of Appeals for the Second Circuit, in Olivier Straw Goods Corporation v. Osaka Shosen Kaisha, 47 F. (2d) 878, at page 879, 74 A.L.R. 1378, states:

"In The Sarnia, 278 F. 459, where the cargo had been improperly stowed on deck, we held that the valuation clauses in the bill of lading did not serve to limit damages. We said, at page 461 of 278 F.: 'The general rule undoubtedly is that, if the shipowner commits a breach of the contract of affreightment which goes to the essence of the contract, he is not entitled after such breach to invoke the provisions of the contract which are in his favor.' "

In Olivier Straw Goods Corporation v. Osaka Shosen Kaisha, 27 F.(2d) 129, at page 133, the Circuit Court of Appeals said: "We can see no difference in principle between a misrepresentation as to the condition of merchandise and a misrepresentation that it is on board, when it is not. Either furnishes a basis for an estoppel."

In Higgins et al. v. Anglo-Algerian S. S. Co., Ltd. (C.C.A.2) 248 F. 386, a carrier though knowing that a shipment of dates appeared to have been damaged when received issued a bill of lading reciting that the shipment was apparently in good order and condition, it was held that the carrier could not have the benefit of an exception in the bill of lading, which provided that no notice in writing be given before the removal of the goods, the court saying that this would enable the carrier to protect itself against the consequences of its own fraud. See, also, The Kerlew (The Mette Jensen) (D.C.) 43 F.(2d) 732.

Accordingly libelant may have a decree for the sum of $1,496.67 with interest from November 12, 1926.