## THE GLOAMING.[1]

### BRAKER *et al.* v. THE GLOAMING.

#### (*District Court, E. D. New York.*   June 11, 1891.)

CARRIERS—DAMAGE TO CARGO—OIL AND PLUMBAGO—LEAKAGE—PRECAUTION.

   Casks of plumbago and cocoanut oil were stowed together in the ship G., and on her arrival from Ceylon the plumbago was discharged damaged by the oil.   It is customary to stow the two articles in the same ship, and leakage from casks of such oil on voyages from Ceylon to New York is to be expected.   Some of the oil was stowed in the wings of the ship, between decks, and the plumbago stowed between the wings, where the oil was, was laid on the deck.   No precaution was taken to prevent the leakage of the oil from reaching the plumbago.   *Held* that, even if the leakage was occasioned by perils of the sea, yet, as the damage to the plumbago might have been avoided by the reasonable exercise of skill and diligence, the omission to take any precaution against such damage constituted negligence for which the carrier was liable.

In Admiralty.   Suit to recover for damage to cargo.
*R. Burnham Moffatt,* for libelants.
*Wing, Shoudy & Putnam,* for claimant.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

BENEDICT, J. This is an action to recover damages for the failure on the part of the ship Gloaming to deliver in like good order as shipped certain barrels of plumbago brought to the port of New York from Colombo, Ceylon. The entire consignment of plumbago amounted to 1,909 barrels. On the arrival at New York some 200 barrels were found to have been rendered unmerchantable by contact with cocoanut oil. The cargo of the ship consisted of plumbago and cocoanut oil, the latter in pipes, puncheons, and barrels. Of the packages of cocoanut oil, 12 emptied themselves of their contents during the voyage either wholly or partially, and the damage to the libelants' plumbago arose from this fact. The evidence shows that it is customary to stow cocoanut oil and plumbago in the same ship, and that leakage from casks of cocoanut oil on such a voyage is to be expected, owing to the fact that the heat of the sun upon a ship during the voyage from Ceylon to New York will cause the casks to shrink and the oil to leak. Leakage of cocoanut oil to a greater or less amount was therefore to be expected on the voyage in question. It appears by the testimony of Charles Gertschaw, who was the stevedore who discharged the Gloaming in New York, that the plumbago belonging to the libelants which was damaged came from the between-decks of the ship. The following was the stowage in the between-decks: She had oil right from the fore peak to the fore part of the aft-hatch solid, and then she had two tiers of oil in each wing of the ship. In the middle of that, and on top, was plumbago, and some coir yarn right aft. This plumbago, stowed between the wings, where cocoanut oil was stowed, was, according to the stevedore, laid on the decks, so that the bottom of the casks got soaked with the oil leaking onto the between-decks from the oil casks in the wings. It is manifest that with such stowage cocoanut oil would be present upon the between-decks of the ship, and that it would damage plumbago stowed on the between-decks, unless some precaution was taken to prevent the oil from reaching the plumbago. The testimony of the stevedore shows that no such precaution was taken. In my opinion, to stow plumbago in such a place upon the decks, without protection from oil that might flow on the decks, in view of the fact that oil might be expected to leak upon the deck from the casks of oil stowed in the wings, was negligence; for assuming, but not deciding, that the leakage of the oil is shown to have been caused by peril of the sea, yet, inasmuch as evidently damage to the cargo from the leakage might have been avoided by a reasonable exercise of skill and diligence, the omission to take any precaution against such damage constitutes negligence, and for negligence the carrier is liable.