### THE DUNBRITTON.[1]

CROOKS et al. v. THE DUNBRITTON. KNUDSON et al. v. SAME. SMAIL et al. v. SAME.

(District Court, S. D. New York. April 20, 1894.)

SHIPPING—DAMAGE TO CARGO—STOWAGE—PLUMBAGO AND OIL—PERILS OF THE SEA—BURDEN OF PROOF.

The ship Dunbritton loaded certain barrels of plumbago at Ceylon, and stowed them in the lower hold. Pipes of oil were afterwards stowed in the betweendecks. The shipment of oil and plumbago in the same vessel is customary. The shippers of cargo other than oil knew that oil was to be taken aboard. The deck upon which this oil was stowed was especially strong, tight, and secure; and the court found, as matter of fact, that the cargo was well stowed and dunnaged. Near Cape Horn the ship experienced very bad weather, and on one occasion shipped a heavy sea; and by reason of this heavy weather, and without any fault of the ship, there was much leakage from the oil. On arrival at New York, some of the plumbago and other goods were found to have been damaged by the oil, to recover for which damage the shippers filed this libel. *Held*, that the damage having occurred by reason of perils of the sea, the burden of proof was upon the shippers to show some fault in the ship, in not protecting the goods against such damage; and as, on the evidence, the shippers had failed to show such fault by any preponderance of proof, they could not recover.

These were three libels against the ship Dunbritton,—the first, by R. Flemming Crooks and others; the second, by Morris F. Knudson and others; and the third, by Henry Smail and others,—all to recover for damages, by leakage of oil, to plumbago and other goods, cargo of said ship.

George A. Black, for libelants.

Seward, Guthrie & Morawetz, for claimant.

BROWN, District Judge. The two libels first above named were filed to recover for damages to plumbago; the last, for damage to

[1] Reported by E. G. Benedict, Esq., of the New York bar.

certain light goods, which were shipped on board the ship Dunbritton, at the ports of Colombo (Ceylon), Cochin, and Aleppy in March, April and May, 1892, and damaged by cocoanut oil during the passage to this port.

The plumbago, consisting of 1,359 barrels, was all taken on board at Colombo and put in the lower hold. It was well stowed and dunnaged, probably in not very unequal quantities forward and aft, as I infer from the testimony, leaving the middle of the hold for other cargo. Forty-five pipes of oil, also shipped at Colombo, were stowed in the betweendecks, aft of the after hatch, and immediately over the plumbago in the hold. These pipes were placed in the aft betweendecks partly for the purpose of trimming the ship, and also because more than enough oil was expected at the other ports to fill the hold amidships. Sailing from Colombo on March 23d, the ship reached Cochin after a voyage of 19 days, where the rest of the oil, being less than expected, was received and stowed in the lower hold. After a short stay at Cochin, the ship proceeded to Aleppy, arriving there on the same day, where the cargo was completed by taking in tumeric, nux vomica, matting, bales of yarn, mats, and other light cargo, stowed partly amidships and forward in the betweendecks, and partly in the hold on top of the barrels and oil. The Dunbritton left Aleppy on May 12, 1892, and arrived at this port on the 19th of October following. On the discharge of the cargo, 718 barrels of plumbago, and a considerable quantity of the other goods, were found more or less damaged by oil. The libelants claim that the damage to the plumbago was caused through bad stowage, in placing the pipes of oil in the betweendecks immediately over the plumbago aft, the damage being alleged to have been caused by the leaking of oil through the deck; and that the damage to the other goods arose from improper stowage, and lack of dunnage to separate them sufficiently from the oil. The defendant contends that the stowage was in all respects good and proper, and that the damage arose from sea perils alone.

The case has been prosecuted on both sides with extreme assiduity; nearly 100 witnesses having been examined, and some 1,500 pages of testimony taken. I shall attempt only to give my conclusions upon the chief points involved:

1. I find that all the heavy cargo throughout was well stowed and dunnaged; and that the other cargo, which by the bill of lading was taken as "broken stowage" or as "oil broken stowage," was well stowed in accordance with these provisions of the bill of lading, with the knowledge and approval of the libelants' agents on the spot, and by stevedores selected and nominated by them.

2. In approaching Cape Horn, the ship for several weeks experienced very bad weather, and on the 10th of July shipped a heavy sea, which did a good deal of damage to her upper works, filled the upper deck with water, and carried away two of the ventilators, through which the water poured down through the betweendecks, until the hold was found to have three feet of water.

3. That in consequence of the heavy weather, and without any fault of the ship, there was much leakage from the pipes of oil in

the hold, and considerable from those in the betweendecks; that this leakage was through perils of the seas, and the cause of all the oil damage here sued for, and within the exceptions of the bill of lading; that there was also water damage to the barrels of plumbago, which has been partly collected; and that a large number of the barrels showing oil damage, also showed rusty hoops as signs of contact with water.

4. That the ship was chartered to the libelants in the third libel above named, for the transportation of oil, as well as other cargo; that the agents of the other shippers understood that oil was to be taken on board, and that the shipment of oil and plumbago on the same ship from that port was customary (The Gloaming, 46 Fed. 671; The Titania, 19 Fed. 101, 107); that the stowage of oil in the betweendecks over the plumbago, though it would be bad stowage, if the deck was not tight, was not in this instance bad or improper stowage, for the reason that the deck was specially strong, tight and secure, the small hatches aft of the main hatch, having been thoroughly caulked before the oil was laden on board.

5. That no oil from the pipes in the betweendecks leaked through that deck upon the plumbago or other goods below, or through the small hatches as the libelants have contended, except a slight stain in one place, which is of no account; that the damage by oil to the plumbago was not confined to the plumbago stowed aft of the after hatch, but was found also to a considerable extent in the plumbago stowed in the forward part of the hold; that the 718 barrels of plumbago damaged, had the injury all been sustained from leaks through the deck aft, would have comprised nearly all the plumbago that was stowed aft; and the damage, had it come about in that way, would also have shown most clearly upon the light goods stowed in the space of about 18 inches deep immediately below the betweendecks, and upon and over the upper tier of the barrels there stowed; whereas, in fact, those light goods were not noticeably damaged, nor were the barrels injured until about half way to the bottom of the hold, which was about 15 feet deep.

6. That somewhat more damage from oil astern than forward is to be reasonably accounted for by the fact that the vessel was loaded deeper by the stern than forward; and the oil taken up and floated by the water would, therefore, be carried more astern, and higher up there, than forward.

7. That the leakage having occurred through a peril of the seas without the ship's fault, the burden of proof is upon the libelants to show some fault and insufficient care in the ship, in not protecting the goods against damage from such leakage of oil (Clark v. Barnwell, 12 How. 272, 281; The Euripides, 52 Fed. 161), and that no such fault is shown by any preponderance of proof in the testimony in favor of the libelants; but that the libelants' testimony is fully met and answered by the defendant's witnesses, who in several essential particulars had the best means of exact observation and information, and are for that reason most trustworthy.

There should be a decree for the defendant, with costs.