## THE ERSKINE M. PHELPS (three cases).

### (District Court, N. D. California, First Division. October 22, 1915.)

#### Nos. 15397, 15403, 15406.

1. SHIPPING ⊚⟶132(3)—SUIT FOR DAMAGE TO CARGO—CONDITION OF GOODS WHEN RECEIVED—RECITALS OF BILLS OF LADING.

The recital in bills of lading of the receipt on board in good order and condition of a stated number of "crates iron bath tubs" has reference to the bath tubs and not to the crates, and casts the burden on the ship to show that they were not in good condition when received.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 479–481; Dec. Dig. ⊚⟶132(3).]

2. SHIPPING ⊚⟶123—LIABILITY FOR DAMAGE TO CARGO—IMPROPER STOWAGE.

Where the crates containing bath tubs shipped from Philadelphia to San Francisco around Cape Horn were such as customarily used, and as had been used with safety on other, but different, voyages, and they were accepted without objection, although their character was plainly manifest, it was the duty of the ship to stow the tubs with reference to such crating, and it cannot avoid liability for their injury on the voyage, largely by reason of their having been stowed one upon another in tiers from 6 to 9 high, on the ground that the crating was insufficient to withstand the weight upon the lower tubs.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 454, 455, 466; Dec. Dig. ⊚⟶123.]

3. SHIPPING ⊚⟶141(3)—LIABILITY FOR DAMAGE TO CARGO—PERILS OF THE SEA.

A ship is not relieved from liability for damage to cargo on the ground of perils of the sea, where the cargo was accepted with full knowledge of its character, the manner in which it was packed, and the storms encountered were no more severe than were reasonably to be expected, in view of the voyage and the season.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 498; Dec. Dig. ⊚⟶141(3).]

In Admiralty. Suits by Holbrook, Merrill & Stetson, a corporation, by the George H. Tay Company, and by the Crane Company against the American ship Erskine M. Phelps; Union Oil Company, claimant. Decrees for libelants.

See, also, 209 Fed. 141.

Samuel Knight, of San Francisco, Cal., for libelant Holbrook, Merrill & Stetson.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for libelant George H. Tay Co.

Denman & Arnold, of San Francisco, Cal., for libelant Crane Co.

Andros & Hengstler, of San Francisco, Cal., for claimant.

DOOLING, District Judge. These cases, consolidated and tried together, are for damage to merchandise shipped at Philadelphia on the Erskine M. Phelps, and destined to San Francisco by way of Cape Horn. The merchandise consisted for the most part of enameled bath tubs and lavatories and was delivered at San Francisco in a damaged condition.

[1] The claimant's first contention is that libelants have failed to

show that the merchandise was received by the ship in good condition. The bills of lading issued by the master recite:

"Shipped in good order and condition by Standard Sanitary Mfg. Co. 559 crates iron bath tubs, 1,311 boxes lavatories, * * * and are to be delivered in the like good order and condition at the port of San Francisco (the dangers of the seas only excepted) unto Holbrook, Merrill & Stetson."

"Shipped in good order and condition by Standard Sanitary Mfg. Co. 575 crated iron bath tubs, 1,237 boxes lavatories, * * * and are to be delivered in the like good order and condition at the port of San Francisco (the dangers of the seas only excepted) unto Geo. H. Tay Co."

"Shipped in good order and condition by Standard Sanitary Mfg. Co. 1,625 crates iron bath tubs (3 rusty outside), 1,850 boxes lavatories, * * * and are to be delivered in the like good order and condition at the port of San Francisco (the dangers of the seas only excepted) unto Crane Co."

It is claimant's contention that these only acknowledge that the crates were in good order and condition, and that libelants were bound to prove that the contents of the crates were in like good condition before they could recover. Manifestly, as to the second bill of lading, in so far as it applies to bath tubs, this contention is unsound, for it is therein stated "575 crated iron bath tubs" were shipped in good order and condition.

I am of the opinion that the contention is equally unsound as to the other articles and the other bills of lading. There is no reservation made in any of the bills of lading. They all recite, not that the crates were shipped in good order and condition, but that the *crates of bath tubs*, were so shipped, and this recital relieves the shipper from making any further proof, until the ship shall have controverted the facts recited, by evidence tending to show that the contents of the crates were not in good condition. If the ship had qualified the bill of lading by reciting that the contents of the crates, or their character or condition, was unknown, the burden of proof as to such condition would have been upon the libelants. In the absence of such qualification, the presentation of the bill of lading was prima facie proof that the articles were in good order and condition when received by the ship.

[2] The second contention of claimant is that, if any damage occurred while the articles were on board ship, it was due to the insufficient character of the crating. But the crating was such as was then in general use for articles of this kind, and the character of the crates was plainly to be seen when they were taken on board. It is in evidence that crates of the same kind, containing like articles, had been carried without injury on other occasions, though not on a voyage around Cape Horn. The character of the crates being plainly manifest, and such crates not being unfitted for carriage by the ship, it was the duty of the ship to stow them in view of the length of the voyage and the character of the seas and weather likely to be encountered. The crating was not intended to be subjected to great weight, yet the bath tubs, weighing from 300 to 350 pounds were stowed in tiers, in some places six, in other places seven to nine, high. The pressure thus exerted on the lower tubs would account to a great degree for the injury sustained.

There were no latent defects in the crates. Their strength or weakness was apparent when the ship accepted them, and, indeed, the

master testifies that the tubs were not heavily enough crated to stand a voyage around the Horn. If this be true, he should not have received them for such a voyage. But it seems to me that this statement means no more than that they were not heavily enough crated to stand a voyage around the Horn in tiers from six to nine high. The burden is upon the ship to account for the injury in such a way as to relieve it from liability. It has not done so by its claim of insufficient crating, in view of the manner in which the tubs were stowed.

[3] The third contention of the claimant is that the injury was the result of "dangers of the sea, to wit the natural action of storms of unusual severity." But the storms encountered were not greater than might reasonably have been expected in rounding the Horn at that season, and in accepting this shipment it must be presumed that it was accepted in view of the character of the goods, the character of the crating, and the weather likely to be encountered. With all these elements before it, claimant accepted the shipment and agreed to deliver it in San Francisco in good order and condition. If the crating, which was designed in order that the tubs might stand on end, was an insufficient crating to stow flat and in tiers, the ship should not have accepted the consignment with the purpose of so stowing them. If stowage on end were impossible, and stowage in tiers unsafe, the consignment should not have been received at all.

The ship has not shown a sufficient reason for not delivering the cargo in good order and condition as agreed. A decree will therefore be entered, referring the causes to the commissioner to ascertain and report the amount of damage. The difficulties suggested as to the proofs of damage must be met as they arise.