## BACHE v. SILVER LINE, Limited.
### No. 187.

Circuit Court of Appeals, Second Circuit.
Feb. 26, 1940.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

Hill, Rivkins & Middleton, Robert E. Hill and Eugene P. McCue, all of New York City, for appellants.

Lord, Day & Lord, and Ernest D. North, all of New York City (Henry C. Blackiston, Jr., and Gordon H. Smith, both of New York City, of counsel), for appellee.

**L. HAND, Circuit Judge.**

■ The district judge has satisfactorily stated the general facts in this case (The M. V. Silversandal, D.C., 26 F.Supp. 61) and we shall proceed upon the assumption of a familiarity with what he said. The claimant's liability must rest upon one of two theories; that the rubber was stowed negligently judged by the customary standard of the trade; or that that standard was so unfair that it should not be incorporated in the contract of carriage. As to the first of these positions, the libellants' witness, Eriksen, was really the only one to criticize the stowage at all, and he did so in two respects; stowing over the rattans, and failing to put dunnage between the tiers. No other witness thought the rattans made an unsafe foundation, and a number said that they did not. Nobody else but Scott recommended that dunnage should be placed between the tiers, and he thought it desirable only up to the fourth. Pilcher, a witness of much experience, not only found no fault with stowage over the rattans, but very positively condemned the use of dunnage between the tiers; he said that it had been tried and found to be "very bad". "I do not think that there is any dispute about that now". Eriksen himself admitted that it was not "the customary practice". Two other experienced former ship-masters and surveyors confirmed Pilcher. Certainly the stowage was good as to the less badly injured bales. Two hundred and forty-nine in all were damaged, of which twenty were badly twisted, and the remainder only a little; twenty escaped altogether. As forty-five were stowed in hold No. 4, some of the slightly damaged bales must have come from there. The best testimony is that in that hold the bales were not more than nine tiers high, and Eriksen did not suggest that that was too much. Therefore, at least as to the less damaged bales, if the ship is to be liable at all, it must be because the custom of the trade was unreasonable. We might still reverse as to the others; but, on this branch of the case also the question is one of fact, i. e., whether the ship conformed to the prevailing standard, and we cannot see that the finding was so clearly erroneous that we must refuse to let it stand.

■ We do not agree that the libellants proved no actionable damage. It is true that the rubber remained the same in quality though the bales were twisted; but the testimony is that when they are stripped of the burlap and the metal bands, the slicing machines must be more often adjusted than when they match in size. The question of damages depends upon what the trade will pay, and if an allowance of half a cent a pound must be made for the more heavily twisted bales, and of one quarter of a cent for the less so, each damage is actionable, if the stowage was bad.

The libellants also proved—and indeed it is not disputed—that in all shipments where bales are stowed more than six or seven high, there was some probability of twisting in the lower tiers; though apparently the great majority of bales ordinarily come through uninjured. They therefore build their case against the ship with this dilemma. If the customary stowage was likely to result in damage, either the ship must stow in fewer tiers; or she must exact a higher freight to insure herself against the inevitable damage. She may not at once accept the rubber at ordinary rates, and not give it the stowage which would protect it. Doherr v. Houston, D.C., 123 F. 334, affirmed, 2 Cir., 128 F. 594; Bank Line v. Porter, 4 Cir., 25 F.2d 843; The Erskine M. Phelps, D.C., 231 F. 767; The City of Khios, D.C., 16 F.Supp. 923. They add that the mere fact that the trade sanctions a practice does not always excuse it; it is the function of the court to say what customs are to be incorporated into a contract of carriage. The T. J. Hooper, 2 Cir., 60 F.2d 737, 740; United States v. M. Levey's Sons, 5 Cir., 288 F. 544; The Nichiyo Maru, D.C., 14 F.Supp. 727, affirmed, 4 Cir., 89 F.2d 539.

■ All this is quite true; and it is also true that if goods, as they are wrapped or cased, are not fitted to endure the ordinary hazards of the voyage, the ship is not liable. § 1304(2) (n), Title 46 U.S. Code, 46 U.S.C.A. § 1304(2) (n). These two doctrines clash, if each is applied with unsparing logic. On the one hand there are very few goods, cased or not cased, that some degree of care will not protect from the perils of a sea voyage; and on the other there are few that cannot be packed or cased so that they will survive the roughest handling. Here, for example, the bales could have been stowed in two or three tiers, and perhaps would not have been crushed enough to count, though even that is an assumption. Also the libellants could have cased them, as is sometimes done, and they could have been safely

stowed in seventeen tiers, as in part they were. To stow the goods as the libellants insist was required, would impose a loss upon the ship; to case them, a loss upon the shipper. Moreover, it is as legitimate an answer for the ship to make to the shipper, that if he delivers the bales, knowing that the customary stowage may damage them, he cannot insist that the stowage is bad; as it is for the shipper to make to the ship that if the ship accepts them uncased, it is bad stowage not to limit the tiers. The greater part of the law is made up of the compromise of such conflicts of interest; and this is no exception. In the carriage of goods the trade must always come to some accommodation between ideal perfection of stowage and entire disregard of the safety of the goods; when it has done so, that becomes the standard for that kind of goods. Ordinarily it will not certainly prevent any damage, and both sides know that the goods will be somewhat exposed; but if the shipper wishes more, he must provide for it particularly.

█ Such standards go into the contract, ordinarily they are the sole measure of the ship's liability. Ketterer v. Armour & Co., 2 Cir., 247 F. 921, 931, L.R.A.1918D, 798; Spang, Chalfant & Co. v. Dimon S.S. Corp., 2 Cir., 57 F.2d 965, 967; Baxter v. Leland, Fed.Cas.No.1125, 1 Blatchf. 526; Lamb v. Parkman, Fed.Cas. No. 8020, 1 Spr. 343; The Titania, D.C., 19 F. 101, 108; The Isaac Reed, D.C., 82 F. 566; The Dunbritton, D.C., 61 F. 764. At times they are not the measure, for by hypothesis the parties have not expressly put them in. They will not be, if they are so unreasonable that it would be unfair to charge the shipper with notice of them. Obviously there can be no rules to determine when a customary standard is of that kind, but it seems to us very plain that this one is not. Our reasons are that, except in the case of the more serious twisting, which is relatively uncommon, the damage is small, not much over one per cent of the value. The shipper can, and at times does, avoid this loss by casing, instead of baling; and while the cost of the casing does not appear, it rested upon the libellants to show what it was, for, as we have said, they must prove that the standard was unreasonable. Nor have they shown the cost to the ship of limiting the number of tiers; and it would indeed be somewhat hard to do so, for it would vary with the total amount of the cargo, the number of ports of call at which the ship touched, and what she lifted

at each. Plainly, it might be a matter of the utmost difficulty for a ship so to dispose a general cargo that bales of rubber should never be heavily laden with anything on top of them. So far as the record justifies any finding, instead of showing that the standard was unreasonable, it shows that the libellants' demands are themselves unreasonable, and that the damages arise from insufficiently covering plastic goods which cannot conveniently be stowed in any other way than as the trade stows them.

Decree affirmed.