**SCHROEDER BROS., Inc., et al.,**
**Libellants-Appellees,**

v.

**The SATURNIA and Italia Societa Anon-**
**ima Di Navigazione, Claimant-**
**Respondent-Appellant.**

**No. 301, Docket 23548.**

United States Court of Appeals
Second Circuit.

Argued April 14, 1955.

Decided Sept. 22, 1955.

Rehearing Denied Oct. 24, 1955.

F. Herbert Prem, New York City (Bigham, Englar, Jones & Houston, New York City, on the brief), for libellants-appellees.

John C. Moore, New York City (Haight, Deming, Gardner, Poor & Havens, Tallman Bissell, and Karl V. Kerth, New York City, on the brief), for claimant-respondent-appellant.

Before CLARK, Chief Judge, and FRANK and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This appeal is from an interlocutory decree entered in an admiralty action in the District Court for the Southern District of New York, whereby it was ordered that the libellants, Schroeder Bros., Inc., recover for damaged cargo (shipments of fresh chestnuts) which was being transported to the United States from Italy aboard the motor vessel "Saturnia," owned and operated by the claimant-respondent (respondent) "Italia" Societa Anonima di Navigazione. The matter was referred to a Special Commissioner to ascertain and compute the amount of damages.

During the latter part of October and the early part of November, 1948, the Saturnia received a cargo of fresh chestnuts from certain Italian shippers at Naples and Genoa and was to deliver the chestnuts to certain consignees in New York. Upon arrival in New York on November 14, 1948, the Saturnia was unable to discharge the chestnuts because of a longshoremen's strike and so returned to Naples, arriving on November 26. The shippers had been notified by a circular letter that the Saturnia would return to Naples on November 26 and would unload the chestnuts if certain conditions having to do with bills of lading and bank guarantees were met by the shippers. On the morning of November 26, the Saturnia arrived in Naples and remained there for about seven hours, but the chestnuts were not unloaded. On the same day, the Saturnia left Naples and went to Genoa, where it remained for several days before again returning to Naples and then to New York, arriving on December 10, 1948. The chestnuts, which had remained aboard the Saturnia during the three crossings of the Atlantic, outturned damaged in New York, mold having set in due to a lack of sufficient ventilation while in stowage.

The district court, 123 F.Supp. 282, found that the chestnuts were still in good condition when the Saturnia left Genoa for its third transatlantic voyage.

The respondent was held liable for the damage after the district court concluded that the chestnuts were given the proper preshipment treatment and were in good condition when received by the Saturnia; that the New York strike was not the cause of the damage; that the respondent had wrongfully refused to discharge the chestnuts in Naples when properly requested to do so by the shippers; and that the Saturnia was unseaworthy because of failure to supply and use proper dunnage and the respondent was negligent in stowing and caring for the chestnuts, in that the dunnage necessary for sufficient ventilation was not used.

In our view of the case, it is unnecessary to decide some of the questions raised by the appellant.

■ It is well settled that the carrier of goods by sea is prima facie liable for damage to cargo which, although in good condition when received by the carrier, outturns damaged at the end of the voyage, unless the carrier can affirmatively show that the immediate cause of the damage was an excepted cause for which the law does not hold him responsible. Schnell v. The Vallescura, 1934, 293 U.S. 296, 303–307, 55 S.Ct. 194, 79 L.Ed. 373; Edmond Weil, Inc., v. American West African Line, Inc., 2 Cir., 1945, 147 F.2d 363, 366.

■ In the case at bar, the respondent raised two defenses which it claimed relieved it from liability under Sections 1304(2) (j) and (m) of the Carriage of Goods by Sea Act.[1] The defense under Section 1304(2) (m) was inherent vice of the goods. Respondent claimed that the chestnuts became moldy because they had not been given the proper preshipment treatment by the shippers. The

district court found to the contrary and concluded that the chestnuts had been properly treated before shipment, and we think that conclusion is sufficiently sustained by the record. Various experts testified concerning the necessary preshipment treatment of chestnuts, and the evidence was by no means harmonious on this point. The trial judge refused to give much weight to the respondent's expert, Dr. Vitagliano, who "displayed only a limited acquaintance with the subject and the character and content of his testimony left much to be desired." There was evidence that the preshipment treatment given the chestnuts was the proper and customary treatment which the shippers had used for many years; that the shipments had been inspected and approved for export by officials of the Italian government and that mold would have set in earlier than it actually did had the preshipment treatment been improper.

■ The arguments which the respondent makes on the basis of the evidence were properly addressed to the district court, but we cannot disturb the findings of that court unless they are shown to be clearly erroneous. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6. This the respondent has failed to do.

■ The other defense raised by the respondent, under Section 1304(2) (j), is that the damage resulted from the longshoremen's strike in New York and, since this is an excepted cause, the respondent is not liable. In order to avail itself of this exception, the respondent had to show that there was a causal connection between the strike and the moldy chestnuts. It is quite clear that the

1. Section 1304(2) of the Carriage of Goods by Sea Act lists the causes of damage for which a carrier will not be liable. Among these causes are: "(j) Strikes or lockouts or stoppage or restraint of labor from whatever cause, whether partial or general: *Provided*, That nothing herein contained shall be construed to relieve a carrier from responsibility for the carrier's own acts;

* * * * *

"(m) Wastage in bulk or weight or any other loss or damage arising from inherent defect, quality, or vice of the goods". 46 U.S.C. § 1304(2) (j) and (m).

chestnuts became moldy because of heat and moisture, and that the immediate cause of the damage was the lack of sufficient ventilation. The essential question concerns the reason why there was a lack of sufficient ventilation. The respondent has asserted that the strike and the ensuing delay in discharging the chestnuts was the cause of damage. But the delay caused by the strike can only be considered to have caused a lack of ventilation if it is established that the strike made it impossible for the respondent to provide sufficient ventilation. General Foods Corp. v. United States, D.C.S.D.N.Y.1952, 104 F.Supp. 629; Schnell v. The Vallescura, supra, 293 U.S. at page 305, 55 S.Ct. at page 196; 46 U.S.C. § 1304. The respondent's duty was to properly stow, carry, keep, and care for the cargo. 46 U.S.C. § 1303 (2). This duty continues at all times, and unless the respondent shows that it could not have performed its duties because of some excuse cognizable under the law as sufficient to relieve it from liability, it must assume full responsibility. The respondent has failed to establish that the New York strike prevented it from providing sufficient ventilation. It has not been shown why, in spite of any delay, the cargo could not have been given the required ventilation or other steps taken to eliminate or minimize the loss.

There is no need to consider other questions raised by the respondent on the other legal bases given by the district court for its decree. Whatever our view might be on those matters would not alter the fact that respondent failed to sustain its burden of showing that its failure to care for the chestnuts by providing sufficient ventilation was due to an excuse cognizable under the Carriage of Goods by Sea Act.

As the Supreme Court said in the Vallescura case, 293 U.S. supra at page 307, 55 S.Ct. at page 197, " * * * the carrier is charged with the responsibility for a loss which, in fact, may not be due to his fault, merely because the

law, in pursuance of a wise policy, casts on him the burden of showing facts relieving him from liability." See 46 U.S. C. § 1304(q).

The decree of the district court will be affirmed.