**S. M. WOLFF COMPANY, Libellant,**

v.

**THE S.S. EXIRIA**, her engines, boilers, etc., and **THE S.S. EXCELLER**, her engines, boilers, etc., and against **American Export Lines, Respondents.**

United States District Court
S. D. New York.
Dec. 28, 1961.

---

Symmers, Fish & Warner, New York City (Peter J. Malloy, Jr., New York City, of counsel), for libellant.

Haight, Gardner, Poor & Havens, New York City (M. E. DeOrchis, New York City, of counsel), for respondents.

CROAKE, District Judge.

### Findings of Fact

1. On November 10, 1956 a shipment of fig paste was loaded aboard the S. S. Exiria, owned by respondents, at Port-omao, Portugal, and was subsequently delivered to the libelant in New York.

2. Bills of lading Nos. 24, 26 and 27 dated November 10, 1956, were issued by the respondent to cover the shipment.

3. The open edges of the fig paste cartons were sealed with a single strip of gummed paper tape approximately 2½″ x 3″ in width.

4. The cartons and gummed paper tape used by the shipper were supplied by the libellant.

5. At the time of loading, some of the packages of fig paste were split at the sides and the contents thereof were protruding and the Bills of Lading Nos. 24, 26 and 27 were marked with the notation "Cartons stained by contents," to reflect this condition.

6. The cartons of fig paste were stored aboard the S.S. Exiria with reasonable care, and extra precautions were taken to prevent further splitting of the cartons.

7. During the course of the voyage, additional cartons split due to the weakness of the gummed paper tape bindings on the edge of such cartons.

8. Libellant, S. M. Wolff Company, purchased the three bills of lading Nos. 24, 26 and 27 dated November 10, 1956, issued by respondent.

9. At the time of the purchase of said bills of lading, libellant was aware that the bills of lading were marked with the exception "Cartons stained by contents."

10. The exception on the bills of lading was reasonable notice to libellant, as purchaser of the bills of lading, of the fact that the contents of the cartons were not wholly contained within the cartons.

11. Libellant was aware of the exception on the bills of lading, but disregarded the exception.

12. The fig paste was partially damaged since foreign matter contaminated the fig paste in areas where it protruded from the cartons.

13. Upon arrival in New York, respondent American Export Lines re-coopered the cartons which were split. However, any damage to the fig paste which resulted from contamination by foreign matter was not altered by the re-cooping of the cartons.

14. Upon arrival in New York, a joint survey of the shipment of fig paste was carried out by the surveyor representing the insurance carrier of the libellant and a surveyor representing the respondent.

15. The joint survey disclosed that the cartons of fig paste were split along the seams which had been sealed with gum paper tape; that the fig paste was protruding from the cartons and may have been contaminated.

### Opinion

This action involves a claim in admiralty by libellant S. M. Wolff Company, the consignee of a shipment of fig paste against the S.S. Exiria and the owners of the S.S. Exiria, American Export Lines, for alleged damages caused to a shipment of fig paste transported from Portomao, Portugal, to the Port of New York.

It is undisputed that the shipment of fig paste was covered by Bills of Lading Nos. 24, 26 and 27 of American Export Lines, Inc., dated November 10, 1956.

Libellant's primary contention was that the shipment was delivered to the carrier by the shipper at Portomao in good order and condition, and that upon out turn in New York, such goods were delivered in a damaged condition.

In its answer, respondent denied that the shipment was delivered to it by the shipper in good order and condition and, additionally, pleaded affirmatively that any damage resulted from causes for which the carrier is not liable under the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304.

This action is necessarily governed by the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315 (1958), 46 U.S.C.A. §§ 1300–1315. Section 1300 of 46 U.S.C. provides that every bill of lading which is evidence of a contract for carriage of goods by sea to or from ports of the United States shall be governed by the applicable provision of this Act, and the bills of lading issued by respondent contain a clause incorporating the provisions of the Carriage of Goods by Sea Act as part of the terms and conditions of the bills. Thus the respective rights and liabilities of the parties in this action must be decided in accordance with the applicable provisions of the Carriage of Goods by Sea Act, supra.

At the trial, respondents maintained that the shipment of fig paste was not delivered to the S.S. Exiria in good order and condition, and, alternatively, that any damage caused while on board the S.S. Exiria was due to faulty packaging by the shipper.

This case does not involve a situation where the carrier issued clean bills of lading, and thus libellant may satisfy his burden of proving good order and delivery to the carrier by admission into evidence of clean bills of lading. See Manhattan Fruit Export Corp. v. Royal Netherlands S. S. Co., 175 F. Supp. 771 (D.C.S.D.N.Y.1958), rev'd. 271 F.2d 607 (2d Cir. 1959), cert. den. 363 U.S. 812, 80 S.Ct. 1249, 4 L.Ed.2d 1154 (1960). The bills of lading issued by the carrier contained the exception "Cartons stained by contents." In the opinion of this Court, the exception provided ample notice to the consignee that the carrier had received defective cartons from the shipper. Libellant strongly contended that the exception was not sufficient notice to it as consignee of the shipment since the exception did not adequately describe the condition of the cartons. However, the Court notes that libellant's evidence on the insufficiency of notice was not compelling. Libellant read into evidence portions of the deposition of Ross Connelly, an officer of the libellant, who testified in the deposition that he had knowledge of the exception but that he disregarded it since he did not believe that the fig paste could leak through the cartons. If anything, this statement confirms the Court's finding that libellant had due notice, for if libellant admits that it was improbable for the fig paste to leak through the cartons, it was reasonable for libellant to suspect that the stains had been caused by some rupture of the cartons. 46 U.S.C.A. § 1303(4), provides that the bill of lading shall be prima facie evidence of receipt by the carrier of goods as described on the bill. The Court is of the opinion that the exception noted on the bills of lading was sufficiently related to the kind of damage alleged. Thus libellant cannot rely on the bills of lading as prima facie evidence that the fig paste cartons were delivered to the respondent in good order and condition. In Hecht, Levis & Kahn, Inc. v. Isthmian S. S. Co., 149 F. Supp. 373, 375 (D.C.S.D.N.Y.1957), this Court held that libellant may sustain his burden of proof by relying on a clean bill of lading only when the condition of the goods on out turn is inconsistent with the description of good order and condition. It follows from this case that libellant cannot establish a prima facie case that the cartons of fig paste

were in good order and condition when delivered to respondent in a situation where the condition upon out turn is consistent with the exception marked on the bill of lading. At trial, libellant introduced no other evidence to sustain its contention that the cartons of fig paste were in good condition when delivered to the respondent. Instead, libellant strongly contended the rule stated in Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373 (1934) governed the question of burden of proof in this case. Although Schnell v. The Vallescura, supra, was decided prior to the passage of the Carriage of Goods by Sea Act, supra, the Court is aware that the rule enunciated therein has been applied in cases interpreting the provisions of the Carriage of Goods by Sea Act. See Schroeder Bros. Inc. v. The Saturnia, 226 F.2d 147, 149 (2d Cir. 1955). However, the Schnell case, supra, did not involve a situation wherein the carrier denied that the goods were delivered in good condition. Under such circumstances, the libellant has the burden of proving that the cartons of fig paste were in good condition when delivered to the carrier. Indeed, this distinction was relied upon by the Court of Appeals of this Circuit in reaching its decision in The Niel Maersk, 91 F.2d 932 (2d Cir. 1937), cert. den. 302 U.S. 753, 58 S.Ct. 281, 82 L.Ed. 582 (1937). Thus respondent is entitled to a dismissal on the single ground that libellant has not sustained the burden of proving its case. See McNeely & Price Company v. The Exchequer, 100 F.Supp. 343 (E.D.Pa. 1951). Alternatively, the Court also notes that respondent elected to put in its own evidence on this issue and, in the opinion of this Court, did prove that the cartons were not delivered to it in good order and condition. Thus, even if the respondent had to assume the burden of proving the condition of the shipment upon receipt, respondent has met this burden.

Libellant advanced a second contention at trial that, even if some cartons were damaged upon delivery to the respondent, additional packages became damaged en route due to improper stowage by the carrier. Libellant argues that respondent is, therefore, liable for the portion of damages caused en route. Respondent contended that it is exempted from any liability since any damage to the shipment en route had been caused by insufficient packaging, and thus respondent is entitled to the exception from liability provided by 46 U.S.C. § 1304(2) (n) (1958), 46 U.S.C.A. § 1304 (2) (n).

At this point, libellant advanced the further contention that, even if some damage was caused by insufficient packaging, respondent was aware of such insufficiency, and was thus bound to use special care in stowing the cargo. In support of its contention, libellant relies upon the doctrine enunciated in The Kerlew, 43 F.2d 732 (D.C.S.D.N.Y. 1924). The Kerlew case was decided prior to the enactment of 46 U.S.C. § 1304, 46 U.S.C.A. § 1304. Since insufficiency of package is specifically included as an exception to the carrier's liability under 46 U.S.C. § 1304(2) (n), 46 U.S.C.A. § 1304(2) (n), it would appear that the strength of the doctrine set forth in The Kerlew is somewhat diminished. The responsibility of the carrier to stow and handle the cargo properly, as set forth in 46 U.S.C.A. § 1303(2), must be read in conjunction with the exceptions set forth in 46 U.S. C.A. § 1304, in order to determine the respective responsibilities of each party.

In Bache v. Silver Line, 110 F.2d 60 (2d Cir. 1940), the Court of Appeals of this Circuit recognized the inter-relationship between improper packaging and proper stowage. In the Bache case, the Court held that a rule of reason was to be applied in determining whether the carrier had used reasonable care in stowing the cargo considering the nature of the shipment and the type of packaging used. The Court recognized that the shipper cannot cast the burden of extra special stowage on the carrier by simply not packaging the shipment properly. This Court is of the opinion that, under

the evidence presented in this case, there is no liability on the respondent.

The question is often presented in cases similar to this one as to whether the libellant or the respondent should shoulder the burden of proving the cause of the damage to the cargo in transit. If such a question had been presented, it may have been necessary to decide whether an exception to the usual rule prevails in a case such as this where an exception is listed on the bill of lading which is related to the kind of damage alleged by the libellant. Cf. Schroeder Bros. Inc. v. Saturnia, supra, with Niel Maersk, supra; The S. S. Asturias, 40 F.Supp. 168 (D.C.S.D.N.Y.1941), aff'd 126 F.2d 999 (2d Cir. 1942). However, no such question was presented in the instant case since respondent shouldered the burden of proving the cause of any damage which resulted to the fig paste while the shipment was en route to New York.

▮ The Court is of the opinion that, under the evidence presented at the trial, the respondent stowed the cargo in a reasonably prudent manner. Even accepting libellant's argument that extra precaution should have been taken, the Court was impressed by the testimony of Mr. Alcorn, the first mate of the S. S. Exiria, in charge of stowage, to the effect that extra precaution was taken in stowing the cargo by limiting the stacking of the fig paste cartons to less than six or seven. Libellant introduced no evidence to show that this manner of stowing the fig paste, adopted by respondent, was not reasonable.

The evidence presented by the respondent at trial concerning the insufficiency of the packaging was compelling. Respondent proved that the seams on the fig paste cartons were bound with single strips of gummed paper tape and that the weakness of this tape was the cause of the splitting. Respondent also proved that other tapes were available which were stronger, and that libellant issued specifications for shipping containers to the shippers, specifically directing that gummed cloth paper tape should be used. It was also shown that libellant supplied the shipping containers to the shippers, and thus was directly responsible for this non-observance of its own instructions.

The surveyor who testified on behalf of respondent stated that, in his opinion, the splitting was caused by the weakness of the tape used. Libellant's surveyor testified that, in his opinion the damage was caused by improper stowage, although he admitted having discussed the insufficiency of the packaging at the time he made his survey report. Of the two witnesses, the Court was more disposed to accept the opinion of the respondent's expert. In any event, when this libellant's surveyor testified as to what he would consider proper stowage, he stated that dunnage should have been used. Respondent's witness, Mr. Alcorn, testified, however, that dunnage, where necessary, had been used.

Accordingly, it is the opinion of this Court that, in applying the principles enunciated in Bache v. Silver Line, supra, to the facts of this case, the method of stowage adopted by the respondent was reasonable, and the cause of the splitting of the cartons and damage to the contents resulted from improper packaging for which respondent is exempted from liability under 46 U.S.C.A. § 1304(2) (n). The Ponce, 67 F.Supp. 725 (D.C.N.J.1946), aff'd 160 F.2d 107 (3d Cir. 1947); Kasser Distillers Products Corp. v. Companhia De Navegacao Carregadores Acoreanos, 76 F.Supp. 796 (D.C.S.D.N.Y.1948).

The Clerk of the Court is directed to enter judgment dismissing the libel, with costs to be settled on notice.

The foregoing shall constitute the conclusions of law of this Court.