**Nancy T. BENJAMIN, Plaintiff,**

v.

**M.V. "BALDER EEMS" and "Fortaleza", their engines, boilers, etc., in rem, Panera N.V. and Puerto Rico Maritime Shipping Authority (Navieras de Puerto Rico) and Puerto Rico Marine Management Inc., in personam, Defendants.**

**No. 82 Civ. 1430 (JES).**

United States District Court, S.D. New York.

July 28, 1986.

---

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City (Thomas E. Willoughby, of counsel), for plaintiff.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City (James E. Ryan, of counsel), for defendants.

## OPINION AND ORDER

SPRIZZO, District Judge:

The following constitutes the Court's findings of facts and conclusions of law pursuant to Fed.R.Civ.P. 52. The parties have agreed to the following facts, upon which the matter is tried to the Court without a jury.[1]

## BACKGROUND

This matter involves a claim by the plaintiff, Mrs. Nancy T. Benjamin, against Puerto Rico Maritime Shipping Authority, Puerto Rico Marine Management, Inc. and the ship "BALDER EEMS" for damage to a shipment of household goods owned by the plaintiff and shipped by the plaintiff from her home in the Dominican Republic to San Juan, Puerto Rico, on the M.V. "BALDER EEMS" in May, 1981. The terms of the contract of carriage called for the goods to be loaded, stowed and counted by the shipper, the plaintiff. *See* Exhibit A to Statement of Agreed Facts.

The plaintiff's goods were loaded into a shipping container at her home at Santo Domingo by a moving company retained by the plaintiff, and transported to the defendants' terminal at Boca Chica. It is agreed that when received by the defendants the cargo was in good order and condition. The day the container was received by the defendants, and prior to the container being loaded on the M.V. "BALDER EEMS", officers of the Dominican National Police, the Dominican Customs Service and the Dominican Port Authority, pursuant to a search warrant issued by the Assistant Prosecuting Attorney of Santo Domingo, *see* Exhibit B to Agreed Statement of Facts, opened the container and searched its contents for drugs. On May 10, the container was ready to be loaded when, as noted above, the secret police prevented the container from being loaded on board for transport while they conducted the aforesaid search. *See* Transcript of Argument ("Tr.") at 2.

During the search, the contents of the container were unloaded by the police and were re-stowed by them upon completion of the search. A small bottle containing a white powder was confiscated and analyzed, but was found not to be an illegal substance. No drugs were found. During the course of the search, however, some of the contents of the container were damaged, and some apparently pilfered. It is agreed that this was done by the Dominican authorities during the time that the container was under their detention. On May 14, the police permitted the container to be loaded on the M.V. "BALDER EEMS" for transport.

The plaintiff obtained an estimate of $26,936.55 to repair the damaged items and to replace those lost, which is agreed to be reasonable.

It is also agreed that the United States Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315 (1981) ("COGSA"), governs the rights, duties, obligations and defenses of the parties.

By further agreement of the parties, the sole issue to be decided by this Court is

---

1. The parties have executed and filed an Agreed Statement of Facts, from which the Court has borrowed liberally—and often literally—in setting out the background of this action.

whether the so-called COGSA defenses to cargo damage claims provided under COGSA, 46 U.S.C. §§ 1304(2)(g) and 2(q), preclude the plaintiff from claiming that the carrier, Puerto Rico Maritime Shipping Authority, or the ship is responsible for the damage suffered to the goods due to a breach of the contract of carriage.

It is defendants' position that the Court must find that COGSA precludes a recovery against the carrier or the ship under the agreed facts of this case.

## DISCUSSION

From the agreed statement of facts, it is clear that the damage to plaintiff's goods "was done by the Dominican authorities and while the container was under their detention," *see* Agreed Statement of Facts at 2, and while the goods were in a foreign country. *See* Tr. at 4. Thus, the key issue is whether the agreed facts of this case fall within the "restraint of princes" exception to COGSA, as set out at 46 U.S.C. § 1304(2)(g).[2] This exception clearly refers to arrest or seizure of cargo under judicial process in the normal course of court administration. *See* G. Gilmore & C. Black, *The Law of Admiralty*, § 3–34, at 164–66 (2d ed. 1975). To the extent that any negligence by the Dominican officials in lawfully effecting the search caused the damage to plaintiff's property, that damage would clearly not be attributable to defendants. *See* Tr. at 30; 46 U.S.C. § 1304(2)(g); *cf. Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426, 430–32 (2d Cir.1962).

However, there is an issue raised by the agreed upon "pilferage" committed by the Dominican officials, i.e., whether plaintiff's damages resulting from that pilferage are properly attributable to the defendants, or whether defendants are protected by the restraint of princes exception. Plaintiff contends that these acts of the agents of the foreign sovereign are *"ultra vires,"* and thus do not fall within the restraint of princes doctrine. Plaintiff further contends that defendants had some responsibility to at least make an effort to protect plaintiff's container from pilferage, to report such acts to other Dominican authorities, and to promptly inventory the property in question and notify plaintiff of any damage or loss so that plaintiff might seek whatever remedies might have been available in the Dominican Republic at that time.[3]

Judge Friendly has succinctly stated the applicable law:

> Under [COGSA] ... a shipper makes out a prima facie case by proving that his goods were delivered to the carrier in good condition and were outturned damaged or not at all; the burden the falls upon the carrier to bring itself within an excepted cause [ (46 U.S.C. § 1304(2)(a)–(q)) ] *or* to prove it exercised due diligence to avoid and prevent the harm.

*See Lekas & Drivas, Inc., supra*, 306 F.2d at 429 (emphasis added); *see also Schroeder Bros. v. The Saturnia*, 123 F.Supp. 282, 284 (S.D.N.Y.1954), *aff'd*, 226 F.2d 147 (2d Cir.1955) (and cases cited therein).

At page 10 of Plaintiff's Memorandum of Law, plaintiff's counsel clearly states that, "[f]or the purposes of this submission, the damages experienced while in the carrier's custody are admitted as having been caused by the Dominican police who searched the container in question at the defendant's facility, and in the process damaged most of the furniture packed therein." Furthermore, the agreed statement of facts is clear that: "[d]uring the

---

**2.** In pertinent part, § 1304 states:
Uncontrollable Causes of Loss
(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—

    \*    \*    \*    \*    \*    \*

    (g) Arrest or restraint of princes, rulers, or people, or seizure under legal process;

**3.** Despite ample opportunity to do so, counsel for plaintiff has been unable to cite any authority for the proposition that such a duty should be imposed upon the carrier. *See* Tr. at 14–15, 33–36. The Court has also been unable to find such authority, and therefore finds plaintiff's argument on this point unavailing. Moreover, there is no indication in the statement of agreed facts that defendants failed to take action to protect, inventory or report on any damage to or pilferage of plaintiff's property.

course of the search ... some of the contents of the container were damaged, *and* some apparently pilfered," and that the parties have "agreed that this was done by the Dominican authorities and while the container was under their detention." *See* Agreed Statement of Facts at 2.

Given such facts, it is clear that defendants have established that the restraint of princes—the action(s) of the Dominican officials—was a cause of plaintiff's loss "in the important practical sense." *Cf. Lekas & Drivas, Inc., supra,* 306 F.2d at 432. The Court agrees with Judge Friendly's reasoning: "To hold that when a carrier has shown that the loss arose as a consequence of restraint of princes, § 4(2)(g) [(46 U.S.C. § 1304(2)(g))], it still has the burden of negating any other fault or neglect of its agents or servants would be to read the qualification of (q) into (a)–(p), although Congress did not put it there." *See id.* at 432.[4]

The Court finds that it may fairly be inferred from the agreed set of facts that defendants had neither access to nor means to exercise control over the container in question while it was under the "detention" of the Dominican authorities. *Cf. The British & Overseas Insurance Co., Ltd. v. American Export Lines, Inc.,* 1948 American Maritime Cases 7, 8–9 (Kingdom of Egypt, Mixed Court of Commerce, Tribunal of First Instance at Alexandria 1947). That being the case, the Court finds that defendants have carried their burden of proof and have demonstrated that plaintiff's loss and/or damage arose as a consequence of restraint of princes, *cf. Lekas & Drivas, Inc., supra,* 306 F.2d at 432, and, alternatively, that defendants have carried their burden under 46 U.S.C. § 1304(2)(q) to negate any fault or neglect by themselves or their agents and servants with respect to the seizure and subsequent loss and damage of plaintiff's property. *Cf. id.*

The Court rejects plaintiff's argument that the acts of pilferage apparently committed by the Dominican officials were acts which were *ultra vires,* illegal or unauthorized under the laws of the Dominican Republic—the place of the injury—and hence that the restraint of princes exception to COGSA is inapplicable in this case. Plaintiff has cited no authority for that position, and the Court has been directed to no authority or legislative history pertaining to the restraint of princes exception to COGSA which mandates judicial inquiry by American courts into the legality or propriety of acts by agents of a foreign sovereign which are committed within that sovereign's territory. Indeed, such inquiry might well be viewed as inconsistent with and perhaps violative of the act of state doctrine. *Cf. Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 697, 96 S.Ct. 1854, 1862, 48 L.Ed.2d 301 (1976); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 428, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964); *Banco Nacional de Cuba v. Chemical Bank New York Trust Co.,* 658 F.2d 903, 908 (2d Cir.1981); *First National Bank of Boston v. Banco Nacional de Cuba,* 658 F.2d 895, 901 (2d Cir.1981); *Atlantic Overseas Corp. v. Feder,* 452 F.Supp. 347, 354 (S.D.N.Y.) *aff'd without opinion,* 594 F.2d 851 (2d Cir. 1978), *cert. denied sub nom. L.H. Feder Corp. v. Atlantic Overseas Corp.,* 444 U.S. 829, 100 S.Ct. 55, 62 L.Ed.2d 37 (1979).

## CONCLUSION

For all the foregoing reasons, the Court finds that COGSA precludes a recovery by plaintiff in this case, and judgment must be entered for defendants. The Clerk of the Court shall enter judgment accordingly.

It is SO ORDERED.

---

**4.** 46 U.S.C. § 1304(2)(q) is the so-called "catch-all" provision to the excepted causes of § 1304(2). It exempts the carrier from liability for "[a]ny other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage." *See Lekas & Drivas, Inc., supra,* 306 F.2d at 432.